No. 12,906.

BURBRIDGE *v.* PUBLIC UTILITIES COMMISSION ET AL.
(12 P. [2d] 1115)

Decided May 23, 1932. Rehearing denied June 27, 1932.

Mr. CLAUDE W. BLAKE, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. COLIN A. SMITH, Assistant, for defendants in error.

Mr. THOMAS R. WOODROW, Mr. ERL H. ELLIS, Mr. J. L. RICE, Mr. JOHN Q. DIER, Mr. C. C. DORSEY, Mr. EDWARD G. KNOWLES, Mr. D. EDGAR WILSON, Mr. ELMER L. BROCK, Mr. JACK GARRETT SCOTT, amici curiae.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

A. T. BURBRIDGE, plaintiff in error, seeks to review a judgment of the Denver district court affirming the findings and order of the Public Utilities Commission which found that Burbridge was "a motor vehicle or common carrier operating without a certificate of public convenience and necessity," and ordered:

"That A. T. Burbridge, respondent, his agents, servants and employes, forthwith cease and desist from operating as a motor vehicle carrier as defined in Chapter 134, Session Laws of 1927, unless and until he shall have obtained from this Commission a certificate of public convenience and necessity according to law.

"It is further ordered, that respondent is hereby directed to file with this Commission within twenty days from date of this order reports of the freight actually transported by him over the public highways of this State since January 1, 1928, and to pay to the Commission as compensation for the use of said highways a mileage tax upon the goods so transported as provided by law."

Under the evidence was Burbridge merely a private carrier or a "motor vehicle carrier" as defined by chapter 134, section 1 (d) Session Laws of 1927? This section provides: "(d). The term 'motor vehicle carrier' when used in this act means and includes every corporation, person, firm, association of persons, lessee, trustee, receiver or trustee appointed by any court, owning, controlling, operating or managing any motor vehicle used in serving the public in the business of transporting persons or property for compensation over any public highway between fixed points or over established routes, or otherwise, who indiscriminately accept, discharge and lay down either passengers, freight or express, or who hold themselves out for such purpose by advertising or otherwise."

The evidence showed and the commission found that Burbridge was engaged in the transportation of freight for hire by motor vehicle; that he transported freight be-

tween Denver and Greeley, Brighton and Eaton; that he operated four trucks with a combined capacity of nine tons; that he had as much hauling as he could handle with his equipment; that he operated regularly five days each week; that his average daily haul was ten tons and his maximum daily haul twenty tons; that he had one written and five oral contracts to haul for six business firms, one of the six contracts being with the MacMarr Stores; that under the MacMarr Stores contract alone he hauled goods regularly from Denver to four stores in Greeley, one store in Brighton and one store in Eaton; that the average daily tonnage moving into Greeley by truck was about 31 tons; that of the total tonnage moving into Greeley by truck, he hauled about one-third; that the MacMarr Stores received between one-third and one-half of all groceries moving into Greeley by truck, 98 per cent of which was hauled by Burbridge; that the four largest stores in Greeley are the MacMarr Stores which were served by Burbridge. Upon the request of said six firms, Burbridge accepted freight from numerous shippers, 91 of whom prepaid the freight. All of the freight so transported was ordered by, for use of, and delivered to, various branches of said six firms. The evidence fails to show that Burbridge did "indiscriminately accept, discharge and lay down * * * freight" or held himself out for such purpose by advertising or otherwise.

Upon denying the petition for a rehearing, a majority of the Public Utilities Commission held: "The evidence did not warrant us in finding, and we did not intend to suggest, that the respondent had been guilty of any conduct tainted with any attempt to conceal or misrepresent any of the facts relating to his operations. We believe he in good faith attempted so to line up his operations that he would not be a common carrier."

■ Chapter 134, Session Laws of 1927, was not intended to, and does not, regulate private motor vehicle carriers for hire. It purports to and does regulate only common carriers engaged in the business of transporting

by motor vehicle passengers or freight for hire. The act specifically defines such a common carrier.

In construing the act it might be held that Burbridge was serving the public, under the doctrine approved in the case of *Davis v. People ex rel.,* 79 Colo. 642, 247 Pac. 801, to the effect that a service by a carrier may affect so considerable a fraction of the public as to warrant it being considered public and that the public does not mean everybody all the time. It is true that Burbridge operated between fixed points and over established routes, but he did not "indiscriminately accept, discharge and lay down * * * freight," nor did he hold himself out for such purpose by advertising or otherwise.

Burbridge was not, therefore, a common carrier as defined by the act, and the commission and the court erred in determining the contrary and that he was subject to regulation as a "motor vehicle carrier" under the statute.

We recognize the fact that in determining whether one is engaged as a common carrier by motor vehicle, a majority of the courts have liberalized the common law definition of a common carrier in many respects. In many instances, this broader rule has been forced upon the courts by motor vehicle carriers who have sought, by various methods of subterfuge, to evade regulation under the law while enjoying the benefits derived from the unrestricted use of public highways. We have no fault to find with the decisions in the numerous cases cited by counsel, but an enumeration and discussion thereof would appear to be unnecessary and unavailing here because none involves the construction of a statute, similar to ours, wherein the term "motor vehicle carrier" is specifically defined.

Plaintiff in error not being subject to regulation under the act, other questions raised by the assignment of errors need not be determined.

It should be noted that the definition of the term "motor vehicle carrier" in the act under which this con-

troversy arose has been amended by the legislature. S. L. 1931, c. 121, p. 481. Therein the words "who indiscriminately accept, discharge and lay down * * * freight" are eliminated and a more stringent definition substituted which may have been intended to cover a situation such as here presented.

The judgment is reversed and the cause remanded to the district court with directions that it vacate its judgment and remand the cause to the Public Utilities Commission with directions that its finding and order of June 16, 1930, be set aside and the proceeding against plaintiff in error be dismissed.

Mr. Justice Campbell and Mr. Justice Burke dissent.