178 P.2d 382

## MALONE et al. v. VAN ETTEN et al.
### No. 7327.

Supreme Court of Idaho.
Feb. 4, 1947.

---

Jess Hawley, Jr., and Oscar W. Worth-
wine, both of Boise, for appellants.

Fred M. Taylor and Maurice H. Greene, both of Boise, for respondent Van Etten.

Robert Ailshie, Atty. Gen., and J. R. Smead, Asst. Atty. Gen., for respondent Public Utilities Commission.

BUDGE, Chief Justice.

This is an appeal from certain orders of the Public Utilities Commission of the State of Idaho in the above entitled proceeding. Briefly stated, the following material facts appear in the record.

July 1, 1944, Edward Van Etten became the owner of, and operated what was known as Nock Transportation Company, a common carrier; C. E. Whitmore became a common carrier of passengers and express during the latter part of July, 1944; both of the above-named carriers were operating between Boise and Stibnite. The latter part of April, 1946, Van Etten ceased operating between Boise and Stibnite; appellant Malone filed an application for permit as a common carrier May 10, 1946, to operate between Boise and Stibnite. Hearing was had on Malone's application June 14, 1946, and said application denied, by Order No. 3057, July 15, 1946.

It was disclosed at the hearing that Malone was operating between Boise and Stibnite as a private carrier under contracts with Stibnite Mercantile Company, Bradley Mining Company, and Ralph Rudolph; that his income under said contracts amounted to $700 a month; that his operations were strictly confined to, and he served only the parties named in the contracts. July 15, 1946, by Order No. 3057, in addition to denying appellant's applica-

tion to become a common carrier, the Commission issued a cease and desist order effectually canceling appellant's contracts.

Subsequent to the denial of Malone's application for a permit as a common carrier, applications were filed by Stibnite Mercantile Company, Bradley Mining Company, and the Village of Stibnite for leave to intervene, for a stay of the cease and desist order, and for rehearing. July 30, 1946, Order No. 3068 was filed by the Commission wherein said application to intervene was denied, and the application for rehearing was stricken from the records. On the same date Order No. 3075 was filed which reads, in part, as follows: "That said application to intervene at this time be denied; that the petition for rehearing be stricken; and that decision as to stay of the cease and desist order be reserved until a petition for rehearing shall have been filed by James O. Malone, the applicant for permit."

August 3, 1946, Malone filed application for rehearing, and on the same date Order No. 3076 was filed by the Commission permitting Stibnite Mercantile Company, Bradley Mining Company, and the Village of Stibnite to intervene. August 6, 1946, the Commission filed Order No. 3077 denying the application for rehearing, and the application for a stay of the cease and desist order.

An appeal has been taken to this court from all of said orders above mentioned, except Order No. 3076.

Appellants set forth seventeen assignments of error, which have been combined into three groups. Under assignments 1 to 7, inclusive, the point is made that the legislature never intended to give the Public Utilities Commission jurisdiction over contract carriers.

The Auto Transportation Act was first enacted in 1925, and has been amended at various sessions of the legislature. Sess. Laws, 1925, chap. 197, p. 365; Sess.Laws, 1927, chap. 237, p. 357; and Sess.Laws, 1929, chap. 267, p. 614. In House Bill 271, as originally introduced it was provided that: "No person * * * shall operate any motor vehicle or motor vehicles for compensation between fixed termini or over a regular route in this state, over any public highway in this state, without having first obtained from the Commission, under the provisions of this Act, a certificate declaring that public convenience and necessity require such operation; * * *" but when finally enacted, Sess.Laws, 1929, chap. 267, Sec. 2 (a), now Section 59-802, I.C.A., it provided: "It shall be unlawful for any motor carrier, as the term is defined in this chapter, to operate any motor vehicle in motor transportation without first having obtained from the commission a permit covering such operation."

It clearly appears from the amendment of the original act that the legislature eliminated therefrom the provision that it was necessary to show convenience and necessity in order to obtain a permit to

operate any motor vehicle or motor vehicles for compensation between fixed termini or over a regular route in this state, over any public highway in this state.

In Order No. 3057, dated July 15, 1946, it is stated: "The responsibility of the applicant does not stand out as an issue in this record, nor does his ability to furnish adequate, safe and proper service. The issues herein, therefore, appear to be narrowed down to the question of whether or not good cause has been shown for the granting of this application."

The Commission found that Malone was responsible, and that he had the ability to furnish adequate, safe and proper service; that the authority under which the Commission may act in granting a permit as a common carrier is sec. 59-804, I.C.A., which reads as follows: "Upon the filing of said application the commission shall consider the same, and if it shall appear that the applicant is responsible and is capable of furnishing adequate, safe and proper service as an auto transportation company, operating as a common carrier, as the term is defined in this chapter, said application may be granted and the commission may issue a permit as prayed for upon good cause shown. * * *"

■ It was not incumbent upon Malone to show convenience and necessity, but only to show good cause and public interest. The words "convenience and necessity" are not used in the statute. From the history of the act no burden was placed upon Malone to make such a showing.

■ It is obvious the entire act is applicable to common carriers and not to contract carriers, over which, under the act, the Commission has no jurisdiction. Sections 59-801 to 59-817, I.C.A.; Smallwood v. Jeter, 42 Idaho 169, 244 P. 149; Burns v. Lukens, 46 Idaho 603, 269 P. 596; In re Public Utilities Commission of Idaho, 51 Idaho 56, 1 P.2d 627; In re Garrett Transfer & Storage Co., 53 Idaho 200, 23 P.2d 739, 740; State v. Smith, 31 Ariz. 297, 252 P. 1011; Michigan Public Utilities Comm. v. Duke, 266 U.S. 570, 45 S.Ct. 191, 69 L.Ed. 445, at page 450, 36 A.L.R. 1105; Buck v. Kuykendall, 267 U.S. 307, 309, 45 S.Ct. 324, 69 L.Ed. 623, at page 627, 38 A.L.R. 286.

Coming now to assignments of error 8 to 12, inclusive, which involve the right of the Commission to file its order requiring Malone to cease and desist from carrying out contracts with Stibnite Mercantile Company, Bradley Mining Company, and Rudolph, under its interpretation of Chapter 8, Title 59, I.C.A., for the reason that said action of the Commission was unconstitutional and void, and in violation of the state and federal constitutions, and in denying the applications of appellants for a rehearing.

Referring first to assignment XI, sec. 59-626, I.C.A., provides: "After an order has been made by the commission, any corporation, public utility or person interested

therein shall have the right to apply for a rehearing in respect to any matter determined therein, * * *."

The Commission in interpreting the above statute adopted Rule IX, subd. 9 of which reads as follows: "Any party to a formal proceeding or any stockholder or bondholder or other party pecuniarily interested in the public utility affected, may apply for a rehearing as to any matters determined by the Commission and specified in the application for the rehearing, * * *".

In other words, it is not a member of the public interested in an order of the Commission that can apply for a rehearing, but according to the Commission as it interprets the statute and by its rule, the rehearing is limited to "any stockholder or bondholder or other party pecuniarily interested in the public utility affected". The Commission erroneously interpreted the statute in this respect by imposing its limitation.

The Commission's cease and desist order was clearly issued without authority. It was without and beyond the jurisdiction of the Commission to effectually cancel the contracts entered into between Malone and Stibnite Mercantile Company, Bradley Mining Company, and Rudolph. With the contracts the Commission was not concerned; their legality or illegality was not a matter for its determination. A reading of the Auto Transportation Law as a whole [Sections 59-801 to 59-817, I.C.A.] can lead to but one logical conclusion. It makes no mention or reference to contract carriers, but clearly has reference only to common carriers, in that it provides the necessary proceedings to be taken to obtain a permit, and the statutory duties and obligations imposed incident to the right to operate as such common carrier. It therefore follows that in issuing the cease and desist order the Commission exceeded its jurisdiction and acted without authority. Said order is therefore void for the reason that it invaded the constitutional rights of appellants guaranteed by the federal and state constitutions. Frost v. Railroad Commission, 271 U.S. 583, 46 S.Ct. 605, 70 L. Ed. 1101, at page 1107, 47 A.L.R. 457; State v. Nelson, 65 Utah 457, 238 P. 237, 42 A.L.R. 849; Weaver v. Public Service Commission, 40 Wyo. 462, 278 P. 542 at 544; Big Bend Auto Freight v. Ogers, 148 Wash. 521, 269 P. 802; Burbridge v. Public Utilities Commission, 91 Colo. 134, 12 P. 2d 1115; 9 Am.Jur. sec. 15, pp. 437, 438; 13 C.J.S., Carriers, § 19 (2), p. 49.

Under assignments of error 13 to 17, inclusive, the question arises whether or not the Commission erred in denying a permit to Malone to operate as a common carrier.

The record discloses that when the application was made Van Etten had abandoned his service as a common carrier between Boise and Stibnite; that Stibnite is located in an isolated section of the state; that the operation of motor transportation

from Cascade to Stibnite, by reason of mountainous roads, is difficult; that the village of Stibnite has a population of approximately 800 people; that it has but one mercantile company supplying the inhabitants of the village and territory adjacent thereto; that it is necessary that they procure fresh fruits, vegetables, meats and other necessities; that the delay in delivering such necessities resulted in meat, milk and vegetables becoming so deteriorated as to be unfit for human consumption. The record also discloses that while Van Etten was operating numerous complaints were made due to his failure to deliver at Stibnite the necessities required by the inhabitants, and his failure to deliver to the Bradley mines materials necessary for their operations; that in order to secure the delivery of supplies to that section of the state private contracts were entered into with the applicant by the companies and the individual heretofore mentioned.

It would extend the opinion beyond reasonable limits to point out in detail the inadequate services rendered and the loss and inconvenience suffered during Van Etten's operations. No other reasonable conclusion can be reached from a consideration of the record than that the applicant, Malone, established good cause that entitled him to the issuance of the permit.

■ The Commission is not charged with the duty of protecting private carriers since they are not included within the provisions of Section 59-526, I.C.A., neither is it charged with the duty of protecting common carriers competing in the open market, or their economic loss or gain, but are required to consider the interest of the public, their needs and necessities and location and, in fact, all the surrounding facts and circumstances, and then determine whether good cause has been shown and the public interest requires that a permit issue, to the end that the people be adequately served.

■ In considering sec. 59-804, I.C.A., and the use of the words "said application may be granted and the commission may issue a permit as prayed for upon good cause shown", *may* should be construed as *must* where the applicant for the permit has fully complied with each and every statutory requirement. We think the rule is well settled that: "Where the public interest or private right requires that the thing should be done, then the word 'may' is generally construed to mean the same as 'shall.'" Hayes v. Los Angeles County, 99 Cal. 74, 33 P. 766, at page 768.

It is held in State v. Title Guarantee & Surety Co., 27 Idaho 752, 152 P. 189: "Where power is given by statute to public officers in permissive language—as that they may do a certain thing—the language used will be regarded as peremptory if the public interest or individual rights require it should be so regarded." See, also, State v. American Surety Co., 26 Idaho 652, 145 P. 1097, Ann.Cas.1916E, 209; Lemp v. Lemp, 32 Idaho 397, 184 P. 222; Shea v. Owyhee County, 66 Idaho 159, 156 P.2d 331, 157 A.L.R. 391; Arizona Cor-

302

poration Commission v. Heralds of Liberty, 17 Ariz. 462, 154 P. 202.

It is abundantly established that the public interest required applicant's services as a common carrier; that good cause was shown for the issuance of the permit, and that the Commission erred in denying the same. Oregon Short Line Co. v. Public Utilities Comm., 47 Idaho 482, 276 P. 970; Jenkins v. Boise Payette Lumber Co., 49 Idaho 24, 287 P. 202; Taylor v. Union Pac. R. Co., 60 Idaho 185, 89 P.2d 1005; Arkansas Railroad Comm. v. Independent Bus Lines, 172 Ark. 3, 285 S.W. 388.

The orders of the Commission are reversed, and the cause remanded with instructions to issue to applicant, Malone, a permit as a common carrier as provided for in Section 59-804, I.C.A. No costs allowed.

HOLDEN, MILLER, and AILSHIE, JJ., and SUTPHEN, D. J., concur.