372 P.2d 135

Application of FORDE L. JOHNSON OIL
COMPANY, Inc., for an IPUC
Motor Carrier Permit.

FORDE L. JOHNSON OIL COMPANY, Inc.,
Applicant-Respondent,

and

Idaho Public Utilities Commission,
Grantor-Respondent,

v.

H. F. JOHNSON OIL COMPANY, Inc., Cant-
lay & Tanzola, Inc., Denver Chicago Trans-
port Co., Inc., Clark Tank Lines Company,
Inc., Pacific Intermountain Express Co.,
Protestants-Appellants.

No. 9076.

Supreme Court of Idaho.

June 4, 1962.

Raymond D. Givens, Boise, for appellants.

Maurice H. Greene, Boise, amicus curiae.

George R. Phillips, Pocatello, and William S. Holden, Idaho Falls, for respondent, Forde L. Johnson Oil Co., Inc.

Frank L. Benson, Atty. Gen., John Kugler, Asst. Atty. Gen., Boise, for respondent, Idaho Public Utilities Commission.

**KNUDSON, Justice.**

Forde L. Johnson Oil Company, Inc. (hereinafter referred to as applicant), is an Idaho corporation with its home office at Idaho Falls, Idaho. It is engaged in operating 22 service stations, a tire business and a diesel repair and equipment shop. On March 31, 1961, applicant filed with the Idaho Public Utilities Commission (hereinafter referred to as Commission) its application for a motor contract carrier permit to transport gasoline, kerosene, diesel fuels, heating oils, furnace oils and tractor fuels in intrastate commerce over irregular routes from Burley, Idaho, to points and places within a 150 mile radius of Pocatello, Idaho, under contract for Continental Oil Company (hereinafter referred to as Continental).

Appellants, all authorized motor common carriers, as protestants oppose the application.

Following a hearing the Commission granted the permit applied for. Appellants thereafter filed a petition for rehearing which was denied. This appeal is from the order granting the permit and the order denying a rehearing.

Under the assignments of error appellants contend that the findings (except one) of the Commission are contrary to the law and evidence. Appellants do not challenge the Commission's finding "That the applicant has shown [itself] to be fit, willing and able to perform the service proposed".

Among the statutes which must be considered in connection with the issue involved is I.C. § 61–802, as amended by Ch. 79, Session Laws of 1959, the pertinent portion of which provides:

"A permit shall be issued to any qualified applicant authorizing the whole or any part of his operations covered by the application made to the commission in accordance with the provisions of this chapter, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules and regulations of the commission thereunder, and that the proposed service, to the extent authorized by the permit, is or will be in the public interest, * * *."

I.C. § 61–801, amended by Ch. 160, Session Laws of 1955, defines the term "contract carrier" as follows:

"The term 'contract carrier' means any person which, under individual contracts or agreements, engages in the transportation (other than transportation referred to in paragraph (f)) by motor vehicle of passengers or property in commerce in the state for compensation."

Appellant excepts to the Commission's finding "That the right to contract is a matter of public interest and this right should be limited only when other public interest factors indicate a detrimental overall effect to the motor carrier industry."

 Until the legislature amended Ch. 291, Session Laws of 1951, the Commission,

under the motor carrier act, was without authority to regulate or in any respect control contract carriers (Malone v. Van Etten, 67 Idaho 294, 178 P.2d 382, 383). In that case, which was decided in 1947, the Commission undertook to issue a cease and desist order, the effect of which was to cancel and terminate a contract entered into by a contract carrier. This Court held that in issuing such order the Commission exceeded its jurisdiction and that the order was void "for the reason that it invaded the constitutional rights of appellants guaranteed by the Federal and State constitutions." The right to make contracts is both a liberty and a property right, and is within the protection of the guarantee against the taking of liberty or property without due process of law, and, while that right is subject to reasonable restraint in the interest of public welfare, arbitrary and unreasonable restrictions and regulations are void. (Weaver v. Public Service Commission, 40 Wyo. 462, 278 P. 542) We do not agree with appellant's contention that "the right to contract has nothing to do with public interest". Although said finding is not controlling in this case, the subject of the finding is a proper factor to be considered.

Appellants complain of the Commission's finding that "protestants did not show that they had or would have any definite substantial loss of intrastate traffic revenue".

Appellants argue that as protestants they are not initially required to show anything, the statutory burden of proof being upon the applicant to demonstrate that the proposed service is or will be in the public interest.

■■ It is true that no duty rests upon protestant to show anything, however if a protestant desires that the Commission be informed as to the effect which the granting of the application will have upon him, it is incumbent upon the protestant to make such showing. Not only are the capabilities of the protesting carriers matters which are peculiarly within their knowledge, it could hardly be expected that applicant would be interested in introducing evidence tending to show that the granting of his application would have an adverse effect upon the carrier industry. There is no presumption that the service of existing carriers would be adversely affected by loss of potential traffic, especially if they have not handled it before. This Court has decided that no duty rests upon the Commission to protect the status quo of existing carriers, but it is required to consider the interest of the public. Application of Bermensolo, 82 Idaho 254, 352 P.2d 240; Malone v. Van Etten, 67 Idaho 294, 178 P.2d 382. It is clear that by the 1951 amendment to I.C. § 61–802 the legislature intended to provide a method under which any contract carriage could be allowed if and when the need of the shippers indicated that it was desirable and in the public interest.

■ The Commission found that any loss of traffic to some of the appellants, as a result of granting the permit applied for, would not be so consequential as to cause a serious change or impairment of their ability to provide adequate service to the State of Idaho. Appellants complain of this finding. The record discloses that only two of the protestants are presently engaged in performing any intrastate service for the Continental Oil Company. One services two key-lock terminals and the other services three terminals in Idaho. The record does not show what the operators receive as net income from such services nor was any estimate thereof given. However, said appellants stated that they would expect to lose some portion of the traffic they now handle for Continental Oil Company if the requested permit is authorized. The evidence indicates that Continental did not intend to use common carrier service in the area involved regardless of whether the permit is granted, except possibly at peak load periods. The Wescott Oil Co., a wholly-owned subsidiary of Continental handles most of its intrastate business. We cannot say that there is no reasonable basis for the finding made.

I.C. § 61–802, as it existed at the time the application here involved was made,

provided in substance that a permit shall issue to any qualified applicant if it is found (1) that the applicant is fit, willing and able to perform the proposed services and conform to the rules and regulations of the Commission and (2) that the proposed service is or will be in the public interest. No issue exists as to the requirements provided for under (1) above. The principal inquiry here represented is what is meant by the requirement that the service is or will be in the public interest and does the evidence support the Commission's conclusion that the proposed service will be in the public interest. In Application of Bermensolo, 82 Idaho 254, 352 P.2d 240, this Court said that " 'Public interest' is not susceptible of precise definition". However we consider a proper construction of the language used in I.C. § 61–802 requiring that the proposed service "is or will be in the public interest" is that the legislature intended the proposed service shall *be consistent with the public interest.*

■ The statutes of this state do not specify any of the factors which must be considered by the Commission in determining whether issuance of a permit to a contract motor carrier is consistent with the public interest and necessarily such determination depends upon the particular circumstances of each case. It is clear that among the factors which should, as a general rule, be considered and weighed is the effect which granting the permit would have upon the service of the protesting carrier as well as the effect of a denial upon the shipper. In the instant case both such facts were considered by the Commission.

In this connection we deem it helpful to examine a provision of the Interstate Commerce Act. Under § 209(b) (49 U.S. C.A. § 309(b)) of said Act as amended in 1957 (71 Stat. 411, P.L. 85–163) the Interstate Commerce Commission is required, in determining whether issuance of a permit will be consistent with the public interest, and the national transportation policy, to consider

"(1) the number of shippers to be served by the applicant, (2) the nature of the service proposed, (3) the effect which granting the permit would have upon the services of the protesting carriers and (4) the effect which denying the permit would have upon the applicant and/or its shipper and (5) the changing character of that shipper's requirements." (Numerals added)

In Interstate Commerce Com. v. J-T Transport Co., 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147, the U. S. Supreme Court had under consideration the foregoing men-

tioned statute and the identical question here presented, wherein the Court said:

"It seems clear from these provisions that the adequacy of existing service is a criterion to be considered by the Commission, as it is instructed to consider 'the effect which granting the permit would have upon the services of the protesting carriers,' as well as the effect of a denial upon the shippers. Or to put the matter otherwise, the question of the need of the shipping public for the proposed service necessarily includes the question whether the extent, nature, character, and suitability of existing, available service makes the proposed service out of line with the requirements of the national transportation policy. But the adequacy of existing facilities or the willingness or ability of existing carriers to render the new service is not determinative. The 'effect which denying the permit would have upon the applicant and/or its shipper and the changing character of that shipper's requirements' has additional relevance. This is a phase of the problem reflected in the broadened definition of 'a contract carrier by motor vehicle' —one who furnishes transportation services 'designed to meet the distinct need of each individual customer.' § 203(a) (15). It means, we think,

that the 'distinct need' of shippers for the new contract carrier service must be weighed against the adequacy of existing services.

\* \* \* \* \* \*

"We see no room for a presumption in favor of, or against, any of the five factors on which findings must be made under § 209(b). The effect on protesting carriers of a grant of the application and the effect on shippers of a denial are factors to be weighed in determining on balance where the public interest lies."

The Court also stated as follows:

"We also agree that though common carrier service is reasonably adequate and though another carrier is willing and able to furnish the service, a permit to a contract carrier to furnish this particular service still might be wholly consistent with the national transportation policy defined in the Act. For it is 'the distinct need of each individual customer' that the contract carrier is designed to fill § 203(a) (15). And 'the changing character' of the shipper's 'requirements' is a factor to be weighed before denying the application. § 209(b). Hence the adequacy of existing services for normal needs and the willingness and ability of an existing carrier to render the

service is not the end of the matter. The 'distinct need' of the shipper may nonetheless not be served by existing services, if the new service is better tailored to fit the special requirements of a shipper's business, the length of its purse, or the select nature of the delivery service that is desired."

Applicant submitted evidence showing good financial condition and adequate operating equipment in good repair. Applicant is an exclusive dealer for Continental in Idaho and it is not disputed that applicant's affiliation with Continental is the reason that protestant, H. F. Johnson Oil Co., Inc., enjoys its interstate hauling for Continental which arrangement is expected to continue even though the permit sought is granted, at least until the shippers' supply point is changed to Idaho. The owner of applicant, Forde L. Johnson, and most of its employees have had long experience in the petroleum industry. Representatives of Continental testified, inter alia, that said company desires to use applicant's services because its employees are familiar with Continental's bulk plant in Idaho and because of the dependability of its services.

Under the brief filed by amicus curiae, three questions are presented concerning issues not raised or involved between the parties to this action. The following stated facts are necessary to a consideration of such questions.

The application of Forde L. Johnson Oil Co., Inc. was filed with the Commission on March 31, 1961. The hearing upon that application was held on April 21, 1961, at which time I.C. § 61–802, as amended by Ch. 79, Session Laws of 1959, was in force and effect. Said section was amended by Ch. 128, Session Laws of 1961 (approved March 11, 1961) whereby the words "in the public interest" were deleted and the words "required by the present or future public convenience and necessity" were substituted. The order of the Commission appealed from is dated June 5, 1961. Since the 1961 amendment to § 61–802 was in force and effect on the date the order of the Commission was entered, it is contended that the following legal questions arise:

1. In order to obtain the permit, was it incumbent upon the applicant to prove that public convenience and necessity required the proposed operation?

2. If it was incumbent upon the applicant to prove public convenience and necessity required the proposed operation, what additional proof was it required to submit over and above the evidence required under the old law where the standard was set that the Commission find the

proposed operation be "in the public interest"?

3. Is the permit that the Commission issued in this proceeding a "public convenience and necessity" permit or is it an "in the public interest" permit?

A decision as to whether the 1961 amendment is to operate retroactively is determinative of question (1). The general rule regarding this problem is stated in 50 Am.Jur. 494, § 478, as:

"The question whether a statute operates retrospectively or prospectively only, is one of legislative intent. In determining such intent, the courts have evolved a strict rule of construction against a retrospective operation, and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it to operate prospectively only, and not retroactively."

In Winans v. Swisher, 68 Idaho 364, 195 P.2d 357, this Court quoted with approval from 59 C.J. 1159, § 692, as follows:

"Retrospective or retroactive legislation is not favored. Hence, it is a well-settled and fundamental rule of statutory construction, variously stated, that all statutes are to be construed as having only a prospective operation, and not as operating retrospectively.

It is equally well settled as a fundamental rule of statutory construction supported and established by numerous judicial decisions that statutes are not to be construed as having a retroactive effect." See also 82 C.J.S. Statutes § 414.

Amicus curiae cites Brainard v. Coeur d'Alene A. Min. Co., 35 Idaho 742, 208 P. 855 as supporting the view that the amendment may be considered as having a retroactive effect. In that case the new legislation was construed as effecting a remedial or procedural matter and extended the time factor as concerning the limitation within which a default may be set aside. Since in the instant case the effect of the amendment is to restrict a substantial right, we do not consider the Brainard case to be in point.

This Court has repeatedly held that a statute should have a prospective operation only unless its terms show clearly a legislative intention that it should operate retrospectively. Ford v. City of Caldwell, 79 Idaho 499, 321 P.2d 589; Application of Boyer, 73 Idaho 152, 248 P.2d 540; Winans v. Swisher, 68 Idaho 364, 195 P.2d 357; In re Pahlke, 56 Idaho 338, 53 P.2d 1177; Independent School Districts, etc., v. Common School District 1, 56 Idaho 426, 55 P.2d 144, 105 A.L.R. 1267; Kelley v. Prouty, 54 Idaho 225, 30

P.2d 769; McCoy v. Krengel, 52 Idaho 626, 17 P.2d 547; State v. Cleland, 42 Idaho 803, 248 P. 831; Cook v. Massey, 38 Idaho 264, 220 P. 1088, 35 A.L.R. 200. No such legislative intent appears or is indicated by the 1961 amendment here considered. It follows that the answer to the first question is *No.*

Having concluded that it was not incumbent upon applicant to prove "public convenience and necessity" the remaining questions are thereby answered.

In reviewing a finding or order of the Commission, this Court may not weigh the evidence, but considers it to ascertain if the conclusions reached are supported by competent evidence. The Commission's ruling will be reversed only when it appears that it has failed to follow the law or has abused its discretion. In re Union Pacific R. R. Co., 65 Idaho 221, 142 P.2d 575; Application of Boise Water Corporation, 82 Idaho 81, 349 P.2d 711; Application of Bermensolo, supra. Having carefully reviewed the record, we conclude that the findings and order of the Commission are supported by competent evidence and should be affirmed, and it is so ordered. Costs to respondent against appellants.

. SMITH, C. J., McQUADE and McFADDEN, JJ., and NORRIS, D. J., concur.