524 P.2d 1338

KEY TRANSPORTATION, INC., dba Sun Valley Key Airlines, Appellant,

v.

TRANS MAGIC AIRLINES CORPORATION, and Idaho Public Utilities Commission, Respondents.

Application of TRANS MAGIC AIRLINES CORPORATION, an Idaho corporation, for a certificate of convenience and necessity.

No. 11234.

Supreme Court of Idaho.

July 11, 1974.

W. J. Anderson of Sharp, Anderson & Bush, Idaho Falls, for appellant.

Joseph M. Imoff, Jr., W. Anthony Park, Atty. Gen., Gary L. Montgomery, Asst. Atty. Gen., Boise, for respondents.

McFADDEN, Justice.

This appeal arises out of an order of the Idaho Public Utilities Commission which granted Trans Magic Airlines, an Idaho intrastate air carrier, authority to operate airline commuter service between Boise and Hailey-Sun Valley. Sun Valley Key Airlines, successor to Sun Valley Airlines which pioneered and solely operated air carrier service on this route, protested Trans Magic's application for air carrier service and offered adverse testimony of the IPUC hearing on the application.[1] After the hearing the IPUC entered an order granting Trans Magic's application for air carrier service on the Boise to Hailey-Sun Valley route. Sun Valley Key peti-

tioned the IPUC for a rehearing, but the IPUC denied the petition. Sun Valley Key then appealed from the IPUC order granting Trans Magic's application and from its order denying the petition for rehearing.

At stake in this appeal is whether Sun Valley Key may maintain its predecessor's position in operating commuter airline service between Boise and Hailey-Sun Valley.[2] Trans Magic through its application sought to increase its revenue in order to compete with federally subsidized interstate airlines in other southern Idaho routes. The IPUC in authorizing Trans Magic's operation in the Boise to Hailey-Sun Valley route succinctly summarized the position of Trans Magic and Sun Valley Key in Idaho's intrastate air carrier service as follows:

"That Trans Magic Airlines is presently providing a valuable public service through the operation of its current intrastate air network; that the continuation of said service will be difficult or impossible without additional sources of revenue; and that therefore, the public convenience and necessity requires the granting of the additional authority requested herein.

---

1. The facts relevant to the issues in this appeal are common to a related but separate Idaho Public Utilities Commission hearing involving the same parties. That hearing involved a joint application of Sun Valley Key Airlines and Sun Valley Airlines for a transfer of Sun Valley's assets to Sun Valley Key. After the death of the founder and president of Sun Valley Airlines his heirs and business associates declined to operate the airline. As a result Key Transportation, Inc., a commuter airline from Utah, agreed to purchase Sun Valley Airlines' assets contingent on IPUC approval. In the meantime Key Transportation, Inc., qualified as a foreign corporation to do business in Idaho as Sun Valley Key Airlines and assumed Sun Valley's schedule. When they made their joint application for transfer of assets, Trans Magic intervened immediately and simultaneously applied for an amendment of its certificate of public convenience and necessity to operate a commuter air carrier route between Boise and Hailey-Sun Valley. The IPUC first heard the issue of Sun Valley's transfer of assets to Sun Val-

ley Key. At this hearing extensive testimony was offered by the applicants and the intervenor on the market and the ability of each applicant to serve that market. The IPUC after the hearing entered an order approving the transfer of assets, and Trans Magic never appealed from that decision. Then the IPUC heard the matter which is at issue on appeal, Trans Magic's application to duplicate commuter airline service on the Boise to Hailey-Sun Valley run which had been the sole province of Sun Valley Airlines. Before the hearing on Trans Magic's application the parties stipulated that the record from the first hearing could be used in the second as evidence.

2. It is to be noted that at the time of its petition, Trans Magic Airlines already had authority to provide air carrier service between Boise and Hailey-Sun Valley on weekends during the three busiest winter months of the year. (Transcript of Secretary, IPUC, case #11234)

**112**

&ast; &ast; &ast; &ast; &ast; &ast;

"This commission fully recognizes that competition between the two airlines on the Boise to Hailey-Sun Valley route might force one of the two airlines out of operation within the State. But as pointed out above, the alternative may very well have the same result. And if there is not room for two regulated air carriers within Idaho, then this Commission would be constrained to feel that the need for regulation of intrastate air carriers in Idaho operating in competition with subsidized federally regulated air carriers is open to serious question. Therefore, the decision to allow both air carriers to service the Boise to Hailey/Sun Valley route is viewed by this Commission as a test of whether there is any real justification for reglation of intrastate air carriers in the State of Idaho."

[Tr. vol. 2 of 2, p. 11]

█ Sun Valley Key in its first assignment of error contends that the commission in granting Trans Magic's application failed to consider the adverse effect of Trans Magic's proposed operation on that of Sun Valley Key in the Boise to Hailey-Sun Valley run.

I.C. § 61–1104 provides in part:

"In considering the public convenience and necessity, the commission *shall,* prior to the issuance of a certificate, *consider the effect of such proposed air carrier operation upon the operations of any authorized air carrier then operating over the routes or in the territory sought. The mere existence of an air carrier in the territory sought who possesses authority similar to that sought by the applicant shall not be sufficient cause to deny the issuance of the certificate;* except that, the commission may not award a certificate of public convenience and necessity which allows duplication of service over a route or in a territory already served by an air carrier certificated by this commission without a specific finding that the certificated carrier

presently serving such route or territory has failed to conform to the terms of its certificate or has failed to comply with the provisions of this act or the orders, rules or regulations of the commission." (Emphasis supplied.)

The commission in its order granting Trans Magic's application and in its order denying Sun Valley Key's petition for rehearing considered the impact of Trans Magic's proposed air carrier service on the Boise to Hailey-Sun Valley route on Sun Valley Key's operation. We conclude that such consideration met the commission's statutory obligation under I.C. § 61–1104.

█ Sun Valley Key in its second assignment of error contends that the commission erred in finding Trans Magic economically able to provide service on the proposed route. This court may not weigh the evidence considered by the commission other than to decide whether or not there is competent and substantial evidence to support the commission's order. See, Taylor v. Union Pac. RR Co., 60 Idaho 185, 89 P.2d 1005 (1939); I.C. § 61–629. The commission's ruling will be reversed only when it appears that the commission failed to follow the law or has abused its discretion. Kent v. Idaho Public Utilities Comm'n, 93 Idaho 618, 469 P.2d 745 (1970). We have reviewed the record and find substantial, competent evidence to sustain the commission's finding of Trans Magic's financial soundness and stability.

█ Sun Valley Key in its fifth assignment of error challenges the commission's failure to find pursuant to I.C. § 61–1104 that the present air carrier serving the Boise to Hailey-Sun Valley route failed either to comply with the provisions of the Air Carrier Act (I.C. § 61–1101 et seq.), the orders, regulations or rules of the commission, or conform to the terms of its certificate of public convenience and necessity. It is a well settled rule that in an appeal from the commission matters may not be raised for the first time on appeal and that where the objections were not raised in the petition for rehearing, they will not

be considered by this court. Sun Valley Key failed to raise this issue in the petition for rehearing in spite of the commission's request that the parties submit briefs on the scope of I.C. § 61–1104. The policy requiring objections to be presented to the commission is that:

" 'The purpose of an application for the rehearing provided by statute, and it must be presumed to have a useful purpose, is to afford an opportunity to the parties to bring to the attention of the Commission, in an orderly manner, any question theretofore determined in the matter, and thereby afford the Commission an opportunity to rectify any mistake made by it before presenting the same to the Supreme Court.' " Idaho Underground Water Users Ass'n v. Idaho Power Co., 89 Idaho 147, 154, 404 P.2d 859, 862 (1965).

It is our conclusion that the issue raised by appellant's fifth assignment of error (failure of the commission to find that Sun Valley Key has "failed to conform to the terms of its certificate or has failed to comply with the provision of this act or the order or regulations of the Commission") was not presented to the commission for rehearing as required and, thus, will not be considered in this appeal. I.C. § 61–626, 61–627; Idaho Underground Water Users Ass'n v. Idaho Power Co., supra; Consumers' Co. v. Public Utilities Comm'n, 40 Idaho 772, 236 P. 732 (1925); Consumers' Co. v. Public Utilities Comm'n, 41 Idaho 498, 239 P. 730 (1925).

■ Sun Valley Key's second, fourth and sixth assignments of error related to the scope and meaning of the term "public convenience and necessity." Sun Valley Key contends first that the commission erred in emphasizing or considering the general public interest in other commuter airline routes in relation to the one sought by Trans Magic. In this regard, Sun Valley Key contends that the commission should have confined itself to the public interest involved in the particular route. Respondents Trans Magic and the commission both argue that the public interest involved in a particular route may encompass the public interest in transportation as a whole and that the commission may consider the relationship of an application for air carrier service on a particular route with other air carrier routes in the state.

■■ The authority of the commission to grant a certificate is conditioned on a finding by the commission of public convenience and necessity. I.C. § 61–1104. In the Air Carrier Act the term public convenience and necessity has a more technical and limited meaning than the general "public welfare" or "public interest." The legislature enacted I.C. § 61–1101 et seq. to protect and safeguard the public interest in transportation by regulating a particular type of carrier—intrastate air carriers. The legislative purpose was to regulate particular routes sought by air carriers in relation to the total public interest in air transportation. See, Application of Bermensolo, 82 Idaho 254, 352 P.2d 240 (1960). The commission in considering applications for air carrier service must exclude those airlines whose operations are not economically viable and would not provide efficient and dependable service. In this case the commission in considering Trans Magic's application recognized the need for a sound intrastate air network and found that Trans Magic's proposed operation in the Boise to Hailey-Sun Valley run would be an important step in that direction. We conclude that the commission correctly viewed public convenience and necessity in regulating air carriers under the Air Carrier Act on a statewide transportation basis rather than that of a particular group's or individual's interest. See, Re Pac. Southwestern Airlines, 72 Cal. PUC 472 (1971); Re Trans-Sierra Airlines, 71 Cal. PUC 788 (1971); Re Air California, 67 Cal. PUC 567 (1967).

■ In relation to the public convenience and necessity Sun Valley Key argues that since its predecessor pioneered service on the Boise to Hailey-Sun Valley route, it should "have a chance to reap the benefit

of the effort, time, and expense invested in developing" the route. Notwithstanding the possible effects of competition on the Sun Valley Key's profit margin, the public in general stands in this case to gain by the competition in Boise to Hailey-Sun Valley runs through frequency of service, new aircraft, better equipment, an increased effort on the part of each carrier to stimulate its own share of the market, and a viable statewide air network. We find no merit in Sun Valley Key's contention that the commission should protect Sun Valley Key's position as sole air carrier on the Boise to Hailey-Sun Valley run. See, Grover v. Ace Equipment Co., 94 Idaho 674, 496 P.2d 673 (1972). Compare, Application of Forde L. Johnson Oil Co., 84 Idaho 288, 293, 372 P.2d 135 (1962); Application of Bermensolo, 82 Idaho 254, 352 P.2d 240 (1960).

We have reviewed the other assignments of error and find them to be without merit.

The orders of the Idaho Public Utility Commission granting the amendment to Trans Magic's certificate of public convenience and necessity (no. 10751) and denying Sun Valley Key's petition for rehearing (no. 10823) are affirmed. Costs to respondents.

DONALDSON, J., and HAGAN, District Judge, concur.

SHEPARD, Chief Justice (dissenting).

I dissent. Inherent throughout the majority opinion is a critical attitude toward "Sun Valley Key's monopoly position as an air carrier on the Boise to Hailey-Sun Valley run." Acceptance and regulation of "monopoly" is a basic part of public utilities law. I had always assumed that public utilities were "monopolies" allowed to exist because of the necessity to accept the realities of "bigness" and dominance of a field in public service type business. Economic history indicates that business organizations would not invest money in large amounts to construct public service facilities for development, distribution or sale of energy in various forms to the public or the providing of ground, air or water transportation, or methods of communication. Without governmental franchising, which provided the investor with a monopoly position, competition might follow which would render the investment worthless. Investors were unwilling to take that risk without being assured of a monopoly position. In return for being granted that monopolistic position the business organization forfeited certain rights which it otherwise possessed in the world of competition. It had to agree that the government that gave it the monopoly position could also regulate the charges which it could assess against the public and the type of service that it would furnish the public.

In the instant case Key's predecessor made the investment in property and equipment to furnish air transportation to the public between Boise and Hailey-Sun Valley on the basis that it would enjoy a monopoly position. The government who so enfranchised it regulated its rates, schedule, equipment and types of service.

The legislature has provided that in such a situation the carrier shall continue to enjoy a monopolistic position and when some other carrier seeks to invade that monopoly it can only be certificated for duplicate service if the government agency specifically finds that the certificated carrier [Key] "presently serving such route or territory has failed to conform to the terms of its certificate or has failed to comply with the provisions of this act or the orders, rules or regulations of the commission."

Here there was no evidence and no finding that Key had failed to comply. The majority opinion reasons that because Key did not present that matter to the commission in a petition for rehearing that it has waived its rights *under the statute*. My conclusion is otherwise. Since Trans Magic did not show and prove what it was required to prove under the statute the commission had no jurisdiction to certificate Trans Magic for duplication of service over the route.

The commission specifically recognized that competition between the two airlines might force Sun Valley-Key out of business. I can only conclude that the certification of Key's predecessor, together with their investment and operations over the route in conformance with the terms of its certificate established a firm and binding contract between Key, its predecessors and the State of Idaho.

It is my opinion that when the commission in violation of the contract of franchise and in violation of the statute controlling its own jurisdiction certificated a competitive carrier to operate over the same routes with Key with the firm understanding that such would probably result in the death of Key, it was clearly erroneous. If nothing else, it certainly was a taking of property of Key without due process of law and is a strange way to regulate a public utility.

McQUADE, J., concurs in dissent.