579 P.2d 120

**BROWNING FREIGHT LINES, INC., and Garrett Freightlines, Inc., Appellants,**

v.

**Dahrl E. WOOD and George F. Hurn, and Idaho Public Utilities Commission, Respondents.**

**Application of Dahrl E. WOOD for Transfer of IPUC Motor Common Carrier Permit No. 618 (First Amended) to George F. Hurn.**

No. 12456.

Supreme Court of Idaho.

May 18, 1978.

Kenneth G. Bergquist, Boise, and Ben D. Browning, Salt Lake City, Utah, for appellants.

Leon R. Weeks, Nampa, and Larry D. Ripley, Boise, for respondents Wood and Hurn.

Daniel L. Poole, Deputy Atty. Gen., State of Idaho, for respondent Idaho Public Utilities Commission.

McFADDEN, Justice.

Appellants Browning Freight Lines, Inc. and Garrett Freightlines, Inc., appeal from an order entered by respondent Idaho Public Utilities Commission that transferred a common carrier permit from respondent Dahrl E. Wood to respondent George F. Hurn, which order is affirmed.

The common carrier permit at issue in this case was originally held by W. A. Sheppard, who owned and operated a moving and storage company in Nampa. The permit allowed Sheppard to carry household goods over irregular routes anywhere within Idaho. The permit also authorized heavy hauling and carriage of limited general commodities over irregular routes "Between points and places within a 100 mile radius of Nampa, Idaho, and, also, between points and places in a 100 mile radius of Nampa on the one hand, and points and places in the entire State of Idaho."

When Sheppard died in April, 1972, his daughter and only heir, respondent Dahrl E. Wood, was appointed personal representative of the estate and her husband, the long-time manager of the firm, was appointed the estate's business manager. By June, 1972, the business manager found that he could not manage the entire estate and he therefore executed a lease of the business to respondent George F. Hurn, an employee. From June, 1972, until June, 1973, respondent Hurn apparently ran the business in the customary manner, retained the profits and made lease payments to the estate. The estate's business manager testified that he informed the Idaho Public Utilities Commission of the lease. Although the IPUC's files show that it wrote the company that common carrier permits cannot be leased, no action was taken.

In June, 1973, respondent Hurn agreed to purchase the business from respondent Wood. The business manager informed the IPUC of this transaction and in return received a brief letter stating that "the information will be made a part of our formal files."

Two years later, respondent Hurn questioned the Commission about the permit and was told that it remained in the name of W. A. Sheppard. The IPUC apparently told respondent Hurn that the permit could not simply be sold and that formal transfer proceedings were required before respondent Hurn could hold the permit. Proceedings were instituted immediately and the permit was transferred without a hearing[1] to respondent Wood. Respondent Wood then filed an application for transfer of the authority to respondent Hurn.

Appellants Browning Freight Lines, Inc., and Garrett Freightlines, Inc., both common carriers operating in Idaho under IPUC permits, objected[2] to the transfer of the general commodities portion of the permit from respondent Wood to respondent Hurn. Appellants pointed out that under I.C. § 61–809, "The commission may   .   .   . on objection or protest to a transfer restrict the scope of any permit upon a showing of an intentional failure to furnish the service authorized by such permit." Appellants argued that because no service had been rendered by the named permit holder for more than two years and because any service rendered during that time was illegal, the general commodities portion of the authority was "totally dormant." Appellants maintained that this amounted to "intentional failure to furnish the service authorized" for which the general commodities authority should not be transferred to respondent Hurn. Appellants also maintained that the freight bills introduced by respondents as evidence of service to the public showed that no general commodities had been transported to or from twenty-

three counties in Idaho in the two and one-half years prior to the transfer application. This, appellants argued, amounted to "partial dormancy," in effect, intentional failure to render the service authorized to those counties. Appellants therefore urged that upon transfer the general commodities authority be geographically restricted.

The Commission rejected appellants' arguments and entered an order transferring the permit. In its findings of fact, the Commission stated:

.   .   . this Commission has the authority to determine if there has been a failure on the part of a permit holder to render transportation service under his permit, and upon a showing of this failure, it may consider the permit holder's authority dormant and refuse to transfer the same. There has not been in the instant case any failure or refusal to operate on the part of the permit holder.

The evidence in this case is clear that although the transferor and the transferee were operating under a mistaken belief that the transfer to Mr. Hurn had been accomplished, they at all times notified the Commission of their actions and operated in a bona fide manner.

The record in this proceeding is clear that the purported transfer to Mr. Hurn in 1972 was not done in any manner as a subterfuge or attempted avoidance of this Commission's rules and regulations

.   .   .   .

.   .   .   .   .   .   .

[Appellants] have presented no evidence to this Commission that the proposed transfer will have any effect upon their intrastate motor carrier operations in the State of Idaho, nor have they submitted any evidence to this Commission that there was any subterfuge, design or intent on the behalf of either the transferor to transferee in this proceeding to avoid or subvert the rules and regulations

---

1. Intrafamily transfers are exempt from the requirement of a public hearing. I.C. § 61–809.

2. The IPUC's new rules of practice were not applicable to these proceedings. Appellants

cannot, therefore, be characterized either as "intervenors" or "protestants" as those terms are now used in the IPUC rules.

and statutory authority of this Commission.

. . . In this case there has not been any intentional or wilful failure to operate on the part of the permit holder . . .

The Commission then concluded that "no intentional failure of the permit holder to furnish authorized service has been shown" and that transfer of the entire authority to respondent Hurn is "consistent with the public interest." Appellants petitioned the Commission for a rehearing but the petition was denied.

In this appeal, appellants argue that the Commission failed to dispose of the factual and legal issues raised and that, therefore, its action was arbitrary and capricious. Specifically, appellants maintain that the Commission failed "to discuss the basic issue of dormancy and transferror's intentional failure to furnish service . . . and to make appropriate findings thereon." In a second assignment of error, appellants charge that "the Commission erred in failing to discuss the ultimate issue of consistency with the public interest and to discuss the basic facts related thereto and to make appropriate findings thereon."

■ Appellants correctly point out that the Commission's final order must state both the ultimate facts and the basic facts upon which the decision depends. As this court stated in *Boise Water Corp. v. Idaho Public Utilities Comm'n*, 97 Idaho 832, 555 P.2d 163 (1976):

In making its determinations the Commission must present in its order the basic (not merely "ultimate") facts necessary to support reasonably its conclusion regarding facts in issue. An "ultimate fact" is generally expressed in the language of a statutory standard, such as "the rate is reasonable; " "the action is in the public interest." "Basic facts" are those upon which the ultimate fact rests. They are more detailed, but are not so detailed as a summary of the evidence. "The findings need not take any particular form so long as they fairly disclose . . . the basic facts upon which the

board relies and its ultimate conclusions therefrom . . . ." *Pennsylvania R. Co. v. Dept. of Pub. Utilities*, 14 N.J. 411, 102 A.2d 618, 631 (1954); Davis, Administrative Law, § 16.06, 450–451 (1958). *See,* Davis, Administrative Law, § 16.06, 449–454 (1958); *Idaho Underground Water User's Assoc. v. Idaho Power Co., supra,* 89 Idaho 147, at 155, 404 P.2d 859; *Mountain View Rural Tel. Co. v. Interstate Tel. Co.,* 55 Idaho 514, 46 P.2d 723 (1935). What is essential are sufficient findings to permit the reviewing court to determine that the Commission has acted nonarbitrarily.

97 Idaho at 840, 555 P.2d at 171; *Bunker Hill Co. v. Washington Water Power Co.,* 98 Idaho 249, 561 P.2d 391 (1977).

■ Once the order has satisfied this requirement, however, this court's review of the findings is limited:

This Court will not weigh the evidence, but reviews the record to ascertain if the conclusions reached are supported by competent evidence. "The Commission's ruling will be reversed only when it appears that it has failed to follow the law or has abused its discretion." [quoting *Intermountain Gas Co. v. Idaho Public Utilities Comm'n,* 97 Idaho 113, 540 P.2d 775 (1975).]

*Hartwig v. Pugh,* 97 Idaho 236, 239, 542 P.2d 70, 73 (1975). *Key Transportation, Inc. v. Trans Magic Airlines Corp.,* 96 Idaho 110, 524 P.2d 1338 (1974); *Grover v. Ace Equipment Co.,* 94 Idaho 674, 496 P.2d 673 (1972); *Kent v. Idaho Public Utilities Comm'n,* 93 Idaho 618, 469 P.2d 745 (1970); *Application of Forde L. Johnson Oil Co.,* 84 Idaho 288, 372 P.2d 135 (1962); *Application of Bermensolo,* 82 Idaho 254, 352 P.2d 240 (1960).

■ Appellants first argue that the findings of fact on the issue of total and partial dormancy are inadequate under the standard adopted in *Boise Water Corp., supra,* and that the Commission's action is therefore arbitrary and capricious. After reviewing the record, this court concludes that the findings of fact, although not highly detailed, "fairly disclose the basic facts" upon which the Commission relied in reach-

ing its ultimate conclusion that intentional failure to provide the service authorized had not been shown. *Boise Water Corp.*, 97 Idaho at 840, 555 P.2d at 171. The findings are sufficient to permit this court to determine that the Commission has not acted arbitrarily. The order will therefore not be set aside for inadequate findings of fact.

■ Appellants next claim that the Commission failed to address the issue of total dormancy, that is, it made no statement of the legal effect of the named permit holder's failure to provide service for two and one-half years and respondent Hurn's unauthorized service during that period.

The record is uncontradicted that both respondent Hurn and respondent Wood kept the Commission apprised of their actions and that they made no attempt to evade the Commission's regulations. The Commission recognized that respondents honestly believed that all transfer formalities had been completed and it stated before this court that "responsibility for the previous lack of a transfer rested almost solely with the Commission and its staff."

Under these circumstances the Commission was not compelled to conclude that service rendered by respondent Hurn instead of W. A. Sheppard's estate amounted to "total dormancy" as a matter of law.

■ The Commission's order shows that it considered most strongly respondents Wood and Hurn's good faith and the Commission's own actions in determining the legal effect of the lack of a transfer. The Commission did not err in doing so. The Commission's order furthermore makes plain the legal effects of these circumstances: that they do not amount to "intentional failure to provide the service authorized." The Commission was not obliged to do more. Thus appellants' claim that the Commission failed to address the legal and factual issues relating to total dormancy must be rejected. Appellants have shown no error in the Commission's rejection of their claims.

■ Appellants next claim that the Commission erred in ruling that the permit was not partially dormant when the record shows respondents had hauled no commodities to twenty-three counties. In *Associated Pacific Movers, Housemovers, Inc. v. Rowley*, 97 Idaho 663, 551 P.2d 618 (1976), this court held that the Commission, in granting a new authority, need not find present or future public convenience and necessity for every point within the geographical boundaries of the grant. To obtain an authority the applicant must show a need for service only within "a substantial portion of the geographical area." *Hartwig v. Pugh*, 97 Idaho 236, 242, 542 P.2d 70, 76 (1975). An analogous rule should obtain in transfer proceedings. The Commission was essentially correct in ruling that "it is not necessary nor required that there be a specific showing of every commodity to every point included within a grant of authority . . . in order to transfer existing authority." A grant of authority is neither dormant nor abandoned where substantial evidence shows reasonably active service to a significant number of representative points within the geographical limits of the authority, as was done in this proceeding. A showing by the Commission or an intervenor of the mere nonoccurrence of service to a particular county or even to a group of contiguous counties is not such an "intentional failure to provide service" that, without more, would allow restriction of an authority under I.C. § 61–809. In fact, such nonoccurrence might simply be a result of never having been asked to provide service. More relevant is whether the permit holder holds himself out as ready to serve the entire area and accepts whatever freight the public tenders. *De Lue v. Public Utilities Comm'n*, 169 Colo. 159, 454 P.2d 939 (1969) *cert. den.* 396 U.S. 956, 90 S.Ct. 528, 24 L.Ed.2d 421 (1969); *Hazard Express v. Hayes Freight Lines*, 245 S.W.2d 585 (Ky. 1952); *J. E. Bejin Cartage Co. v. Michigan Public Service Comm'n*, 352 Mich. 139, 89 N.W.2d 607 (1958); *Herrett Trucking Co. v. Washington Public Service Comm'n*, 377 P.2d 871 (Wash.1963); *Lee & Eastes, Inc. v. Public Service Comm'n*, 52 Wash.2d 701, 328 P.2d 700 (1958).

In the instant case the Commission found that "the hauling records submitted by the transferee and transferor at the hearings . . . clearly reflect that a wide variety of commodities were transported to various locations in the State of Idaho." The evidence also shows that the company held itself out as a state-wide mover and general freight company and never refused tendered freight. In light of this evidence and the absence of contrary evidence from appellants, there is no error in the Commission's conclusion that partial dormancy had not been shown.

Nor did the Commission err in refusing to go beyond the facts of this case to define "partial dormancy" precisely, as appellants allege. Determination of partial dormancy requires consideration of the facts of each case and the Commission should be permitted to exercise its expertise to develop the concept of dormancy on a case by case basis. *See, Grever v. Idaho Telephone Co.,* 94 Idaho 900, 499 P.2d 1256 (1972). Appellants have not shown that the Commission's standard of dormancy is "inadequately developed" or reflects a "lack of developed thought," *Northeast Airlines, Inc. v. Civil Aeronautics Board,* 331 F.2d 579 (1st Cir. 1964); K. Davis, Administrative Law Treatise, § 16.12 (1970 Supp.), or that the standard's application has been arbitrary and capricious, *Intermountain Gas Co. v. Idaho Public Utilities Comm'n,* 97 Idaho 113, 540 P.2d 775 (1975).

Appellants next contend that "the Commission erred in failing to discuss the ultimate issue of consistency with the public interest and to discuss the basic facts related thereto and to make appropriate findings thereon." It is noted that I.C. § 61–809 requires the Commission to find specifically that the transfer is "consistent with the public interest."

" 'Public interest' is not susceptible of precise definition." *Application of Bermensolo, supra,* 82 Idaho at 258, 352 P.2d at 242. In general, where the Commission is required to consider the "public interest," it must look to "the interest of the public, their needs and necessities and location and, in fact, all the surrounding facts and circumstances . . . to the end that the people be adequately served." *Malone v. Van Etten,* 67 Idaho 294, 301, 178 P. 2d 382, 385 (1947); *Application of Forde L. Johnson Oil Co., supra,* ("[N]ecessarily such [a] determination depends on the particular circumstances of each case.") Where an applicant is required to show and the Commission find that a transfer is "consistent with the public interest," there is no need to show that the permit is at that point "required by public convenience and necessity." *Cf. Application of Forde L. Johnson Oil Co., supra* (original application); *Malone v. Van Etten, supra* (original application).

In this case the Commission entered findings of fact that:

The motor carrier operation has been in existence at least since the inception of the motor carrier laws regulating irregular route haulers in the State of Idaho. The hauling records submitted by the transferee and transferor at the hearings held on this matter clearly reflect that a wide variety of commodities were transported to various locations in the State of Idaho.

.     .     .     .     .

Since 1955, Mr. Hurn has been an employee of Sheppard-Wood Van and Storage Co., acting as general foreman for a majority of that time. Both Mr. Wood and Mr. Hurn testified in this proceeding that there had been no change in the activities of the Sheppard-Wood Van and Storage Co. for the last fifteen (15) years.

.     .     .     .     .

The transferee, George F. Hurn, proposes to continue to use the assumed business name of Sheppard-Wood Van and Storage Co. There was no dispute that the transferee was financially qualified with total assets of $181,975.00 and total liabilities of $2,349.00. In addition there was no dispute that the transferee had sufficient operating equipment and that the operating equipment was adequately maintained. George F. Hurn is fit, willing and able and competent to perform a motor carrier business.

In these findings of fact the Commission covered the firm's history of service to the public and those characteristics of the transferee relevant to his ability to continue rendering the same service. While these findings do not explicitly discuss the meaning of "public interest" and are not elaborate or detailed, they fairly disclose the basic facts upon which the Commission relied and permit this court to determine that the Commission has not acted arbitrarily. *Boise Water Corp. v. Idaho Public Utilities Comm'n, supra.* Appellants' claims that the Commission's findings are insufficient and fail to address the issue of public interest are therefore without merit.

Order affirmed. Costs to respondents.

SHEPARD, C. J., DONALDSON and BISTLINE, JJ., and DUNLAP, District Judge (Ret.), concur.