(No. 7121. October 7, 1943.)

IN THE MATTER OF THE APPLICATION OF THE UNION PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLANT, FOR LEAVE TO DISCONTINUE AGENCY AT FRANKLIN, IDAHO.

[142 Pac. (2d) 575.]

Rehearing denied November 15, 1943.

222

Geo. H. Smith, H. B. Thompson and L. H. Anderson for appellant.

P. J. Evans for protestants.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for the Public Utilities Commission.

224

GIVENS, J.—Appellant, Union Pacific Railroad Company, filed with the Public Utilities Commission of Idaho an application asking leave to discontinue its agency and reporting station at Franklin, Franklin County, Idaho, until such time as conditions should warrant the employment of an agent at said station.

Franklin, having a population of about 800 in the precinct and serving some adjacent territory, is located on the Cache Junction-Preston Branch of the Union Pacific Railroad, which branch diverges from the main line from Salt Lake to Pocatello and Butte at Cache Junction, it being approximately 50 miles from Cache Junction to Preston. Franklin is seven miles south of Preston, an agency station, 3.4 miles north of the Idaho-Utah state line, and about six miles north of Richmond, another agency station. Several trucklines operate daily over highway No. 91, which runs through Franklin, and there are three daily Union Pacific buses both north and south. Appellant has one round-trip, combination passenger, baggage, express, and mail train, and one freight train daily except Sunday from Cache Junction to Preston.

Protestants are the Village of Franklin, the Preston Chamber of Commerce, the California Packing Corporation, and the Franklin Mill and Elevator Co., claiming that the people of Franklin would be seriously inconvenienced by the closing of the railway.

The commission found that public convenience and necessity require the services of an agent at Franklin, that the expenses of maintaining an agent is not an undue burden upon other revenue, that the war effort in producing and shipping essential food products would be hindered by the closing of this agency, and that the allegations of the application have not been proved, and denied the petition to close the agency. This appeal is from that order. The assignments of error are that the evidence was insufficient to support the findings.

Petitioner relies upon In the Matter of the Appli-

cation, etc., Ida. 134 P. (2d) 599, in which case this court vacated the order of the Public Utilities Commission denying the Union Pacific Company's petition to discontinue its regular station agency at Montour, Idaho. It is unnecessary to repeat the facts therein disclosed, which differ materially from those herein. The rule of law laid down was as follows:

"We doubt, however, whether the items of income from business done at a single country station, on a great transportation system like the Union Pacific Railroad Company, is entitled to a major consideration, for the reason that the system is constructed and the franchises are granted and acquired for service to the whole public; and the more prosperous and remunerative communities are bound to pay some revenue to equalize the burdens of service to the more remote and less prosperous communities through which the system operates. [Citing authorities.]

\* \* \* \*

"In arriving at a conclusion as to what constitutes 'adequate, efficient, just and reasonable' service in any particular case, the relative rights of the utility and the public must be taken into consideration, for, under some circumstances, each may have to suffer some inconvenience or loss. A particular service by a public utility may be *reasonable* in a small, noncommercial community which would be wholly inadequate and inefficient in a commercial or manufacturing community. [Citing authorities.]"

There are only two shippers in Franklin—C. U. Bradford & Sons, who operated the Franklin Mill & Elevator, and receive approximately 25 carloads of coal a year, and the California Packing Company. The latter company received 28 carloads of coal from July 1, 1941, to July 1, 1942, and other inbound freight consisting only of cans, labels, salt, machinery, and printed forms. This company packs string beans, lima beans, and peas and has shipped from 90 to 100 cars of canned goods a year, and anticipates an increase in output of about 20% because of additional government orders. Mr. Parsons, of the traffic department of the California Packing Corporation, testified that as far as he knew his company did not have a packing plant in any town where there was not an agent, and that inconvenience to his company would arise in making the bills of lading comply with government regulations and in inspecting the inbound cars to ascertain damage. Mr. Parsons further

testified that his company is packing for the government, that its packing business will increase about 20%, that government bills of lading are "very tricky in handling", and that the company wouldn't want a man driving to Preston every time it had any business with the Union Pacific. Mr. Bradford testified he would be inconvenienced in having to drive to Preston to transact much of his business and in not having the aid of the Franklin agent in spotting coal cars. Further inconvenience to the citizens would arise because of the poor telephone service available at Franklin (due to the extensive use of party lines), which would cause delay when attempting to call the agent at Preston, as well as making the delivery of telegrams more difficult. There would also be the necessity of locating the person responsible for the key to the depot in which the freight and express would be stored. Appellant, on the other hand, presented plausible means of handling their shipments and their billing.

Appellant's Exhibit 12 contains a summary of revenue and expenses as follows:

|  | "1939 | 1940 | 1941 | Jan.-April, Inc., 1942 |
|---|---|---|---|---|
| Revenues from business at Franklin, Idaho |  |  |  |  |
| Freight forwarded | $12,735 | $19,894 | $22,339 | $5,448 |
| Freight received | 3,559 | 3,555 | 6,154 | 1,504 |
| Total—Freight | 16,294 | 23,449 | 28,493 | 6,952 |
| Passenger—Ticket sales | 30 | 128 | 57 | 20 |
| Other revenue (excl. Express) | 22 | 15 | 95 | 9 |
| Grand Total Revenue | $16,346 | $23,592 | $28,645 | $6,981 |
| Station Expenses at Franklin, Idaho | $ 2,114 | $ 2,095 | $ 2,142 | $ 877" |

Although the business at Franklin has been increasing, appellant contends the business transacted at said station "does not justify, warrant, or render profitable or advisable further maintenance or operation of an agency station, and that public convenience and necessity do not require or demand that such agency be continued or kept open"; also,

that at the present time there is a shortage of experienced telegraphers and that the services of the agent-telegrapher at Franklin can be better utilized elsewhere to assist in expediting the movement of trains.

Appellant suggests the freight business now handled at Franklin could be taken care of through its agents at Preston or Richmond in the following manner: if there was any out-bound freight or express to be picked up at Franklin, the agent at Preston could be notified by telephone, he could in turn notify the train crew to pick it up, and the Preston agent could collect the amount due. Inbound shipments could be placed in the freight depot at Franklin and the key left with some responsible person in Franklin. Inbound shipments would have to be prepaid. Passengers could flag the train and purchase their tickets on the train.

Less than carload shipments were as follows: for the year 1939, 2 tons, revenue $20; 1940, one ton, $40; 1941, 3 tons, $33; for the first four months of 1942, 1 ton, $38. Receipts for the less than carload shipments received were: 1939, 24 tons, $442; 1940, 22 tons, $447; 1941, 32 tons, $552; first four months of 1942, 12 tons, $224.

The following revenues were derived from the sale of passenger tickets, sending telegraph messages, and for demurrage, baggage, and miscellaneous sources:

| Year | Revenue from tickets | Revenue from baggage, demurrage, telegraph, misc. |
|---|---|---|
| 1939 | $ 30.45 | $22.04 |
| 1940 | 127.85 | 15.35 |
| 1941 | 56.57 | 94.81 |
| 1942 (4 months) | 20.25 | 103.85 |

The income from other than carload lots, tickets, telegraph, and miscellaneous items as compared with the station expenses at Franklin is as follows:

| Year | Expenses | Income |
|---|---|---|
| 1939 | $2,114 | $514.49 |
| 1940 | 2,095 | 630.20 |
| 1941 | 2,142 | 736.38 |
| 1942 (4 months) | 877 | 386.10 |

It was asserted by appellant that the ratio of station expense to revenue at Franklin was 11.53 as against the average over the entire Union Pacific system of 3.60. On the other hand, it was shown that the ratio in 1939 was 4.02 on the entire system; that in Franklin, in that year, it was 12.93; and it was admitted that Franklin was making a better showing in the way of reducing the difference than the system average; and it was not shown what the average ratio was as to other stations in the immediate vicinity or other than on the entire system. Commissioner Young, in examining Mr. Callin, who was an assistant general auditor of appellant, queried as follows:

"Q. There are other features that enter into it, but if we want to make a fair comparison with the other farming communities, I think we should have something to base it on. If we are going to make this conclusive, and take the system as a whole, compare it with the system as a whole, then we have got to compare the trend as a whole with the system as a whole, which would show that Franklin is showing up fine, and carrying a lot of dead weight for a lot of the rest of them, so far as the trend is concerned."

"Q. * * * if we want to get a picture before us here today, showing the ratio at Franklin of expenses to revenue, it seems to me like the fairest picture would be to take other farming communities; if you don't do that, but, instead, take your system as a whole, which takes in, as I understand, a lot of the larger cities, coal mining stations, and things of that kind, where you have heavy tonnage, and maybe some of these stations where you are handling immense orders of war materials, where your ratio would run a way down—if that is what you are going to bring to us here, why then Franklin is showing up fine and dandy, according to the trend over the last two or three years."

Mr. Callin's answers indicated that the commissioner's observations were pertinent, urging, however, other considerations as reflected in Mr. Morrison's (assistant superintendent of appellant) answers relative to the same general situation, as follows:

"A. Well I wouldn't say that we stressed the revenue as much as we do the absolute necessity for retaining the agency at that particular location, taking into consideration, of course, the volume of business that comes from there, the population that is being served, and whether or not any serious inconvenience would result by closing the station. There are occasions of course, where we retain stations that, from the standpoint of revenue, and many other factors, are not necessary, but from an operating standpoint their use as a telegraph office, moving trains, enters into it, and we retain the station just from an operating standpoint, a necessity from an operating standpoint.

"Q. For railroad reasons?

"A. For railroad reasons exclusively.

"Q. And do you consider, Mr. Morrison, say, at Franklin, for instance, whether there are a great number of commodities being handled, or only a few, or whether there is a number of shippers considered?

"A. I would say they are very limited, extremely limited, and of course there is no necessity from a railroad standpoint, and the fact that we have a number of other agencies closed that are handling shipments of a more varied nature, and satisfying the public that is being served at those points without complaint, naturally we use that as a yardstick in connection with making a decision with regard to a place like Franklin."

Thus, expense compared to revenue was recognized as not the sole or controlling factor.

The law is that findings and orders of the Public Utilities Commission, if supported by competent evidence, will be binding upon this court, and they will be reversed only when it is shown the commission has abused its discretion or failed to follow the law. In order to reverse the commission we would have to find that it abused its discretion or that the evidence is incapable of any reasonable conclusion except that the agency should be done away with. (*Boise Artesian Water Co. v. Public Utilities Comm.,* 40 Ida. 690, 236 P. 525; *Capital Water Company v. Public Utilities Comm.,* 44 Ida. 1, 262 P. 863; *Nez Perce Roller Mills v. Public Utilities Comm.,* 54 Ida. 696, 34 P. (2d) 972; *Taylor v. Union Pacific Railroad Co.,* 60 Ida. 185, 89 P. (2d) 1005; *Union Pacific Railroad Co. v. Public Service Comm.,* Utah, 132 P. (2d) 128.)

The testimony to the effect that passengers would have to flag the train if they wished to get on it and purchase their tickets from the conductor, that inbound shipments would have to be prepaid and that many outbound shipments must be prepaid, that due to enlargement of warehouse space by the canning company outbound shipments will extend throughout the year, that the canning company anticipates a 20% increase in pack and is filling government orders, and that the use of party lines is prevalent in Franklin and it is sometimes difficult to get telephone calls through, sufficiently supports the first and third findings of the commission.

Appellant urges that the agent at Franklin, who is an experienced telegrapher, could be sent where he was needed more in that capacity and either an agent who was not a telegrapher or one with less experience could be employed. The evidence adduced by the appellant was, however, to the effect that because of arrangements between appellant and the various unions which might be affected and the seniority rights possessed by the present agent such a change could not be made. This feature is of importance and militates strongly against appellant's position; it is only one circumstance, however, and is not conclusively controlling.

On the other hand, viewing the entire situation, considering the increase of business at Franklin, the age of the community, this being the first railroad built in Idaho, completed through Franklin in 1874, and the widespread influence and effect on the California Packing Company, even though it is only one shipper, by reason of the fact that it is a purchaser from many people in the community, and the deleterious effect which must necessarily follow the closing of the station, there being nothing more discouraging to a passer-by in a community than to see a boarded-up railroad station, and in view of the fact that certain and necessarily rather wide discretion is lodged in the commission in the determination of questions of this kind, we cannot say that the record presents such a situation that we are justified in saying that there is not sufficient evidence to support and justify the conclusions reached by the commission.

The order is therefore affirmed. Costs are awarded to respondents.

Holden, C.J., and Ailshie, Budge, and Dunlap, JJ., concur.