372 P.2d 409

The WASHINGTON WATER POWER COMPANY, Applicant-Appellant,

v.

IDAHO PUBLIC UTILITIES COMMISSION, Grantor-Respondent,

and

Petrolane Gas Service, Inc., Applicant-Respondent,

and

Kootenai Gas Utilities, Inc., Applicant-Respondent.

Application of BONNER GAS COMPANY, The Washington Water Power Company, Petrolane Gas Service, Inc., Kootenai Gas Utilities, Inc., for a Certificate of Public Convenience and Necessity for Distribution of Natural Gas in Sandpoint, Idaho, and Kootenai Gas Utilities, Inc., Petrolane Gas Service, Inc., The Washington Water Power Company, for a Certificate of Public Convenience and Necessity for Distribution of Natural Gas in Bonners Ferry, Idaho.

No. 9085.

Supreme Court of Idaho.

June 15, 1962.

Carey H. Nixon, Boise, Robert L. Simpson and Alan P. O'Kelly, Paine, Lowe, Coffin, Herman & O'Kelly, Spokane, Wash., for Washington Water Power Co.

Frank L. Benson, Atty. Gen., John B. Kugler, Sp. Asst. Atty. Gen., Boise, for Idaho Public Utilities Commission.

Watt E. Prather, Bonners Ferry, and Robert V. Wills, Long Beach, Cal., for Petrolane Gas Service, Inc.

Darwin Cogswell, Atty. for Sandpoint, amicus curiae.

TAYLOR, Justice.

The appellant The Washington Water Power Company and the respondent Petrolane Gas Service, Inc., along with two others not now involved, were rival applicants for a certificate of public convenience and necessity for the distribution of natural gas in Sandpoint, Bonner county. The applicants will be referred to hereinafter as "Washington" and "Petrolane."

Washington's application was filed in September, 1959. Petrolane filed its application in June, 1960, and simultaneously therewith filed its separate application for a certificate to serve Bonners Ferry in Boundary county, some thirty-four miles to the north. The applications of Washington and another applicant for Sandpoint, were heard by the commission on June 15th and 16th, 1960. Petrolane's application to serve Sandpoint was heard July 21, 1960, and its application, together with that of another applicant, to serve Bonners Ferry was heard September 23, 1960.

March 27, 1961, the commission by order No. 5887 denied the application of appellant and awarded a certificate for the distribution of natural gas in Sandpoint to respondent; and by order No. 5886 it awarded a certificate for service in Bonners Ferry to respondent Petrolane. In order No. 5887 the commission in its conclusion said:

"The evidence submitted by both Petrolane and Washington is the result of thorough investigations and the application of reliable and reasonable estimates. Both projects are conservative and can be attained, are feasible, and each of the applicants has the ability to finance and construct the proposed systems. Washington's application is for Sandpoint only, while Petrolane has applied for both Sandpoint and Bonners Ferry and in view of our further conclusion hereinafter set forth, we conclude that the application of Washington should be denied and the application of Petrolane should be granted."

and found:

"That the public interest requires and will continue to require that a Certificate of Public Convenience and Necessity be granted to an applicant who has applied to serve both the communities of Sandpoint and Bonners Ferry.

* * * * * *

"That The Washington Water Power Company did submit evidence in support of its application that is reliable and reasonable and its estimates are the results of a thorough investigation and the application of current experience; that Washington did not apply to furnish natural gas service to Bonners Ferry area and therefore should be denied."

Up to that time, the commission had assigned separate case numbers and had conducted the hearings treating the applications for service in the two communities as two separate and distinct proceedings and required the applicants to present their proposals, plans and estimates for service in each community separately. No evidence was received on the basis of a combined plan of distribution for both communities. Therefore, the finding of the commission, that the public interest required certification of an applicant who had applied for authority to serve both communities, was not based upon any evidence in the record.

Thereafter, Washington's application for a rehearing was granted and that company then filed its application for a certificate to serve Bonners Ferry. In granting the rehearing the commission announced its purpose "to determine the feasibility of combined service to the communi-

ties of Sandpoint and Bonners Ferry." At the opening of the hearing, May 25, 1961, the commission on its own motion ordered that the cases involving the two communities be combined into one "for purposes of the rehearing," although this was the first hearing on the application of appellant for certificate to serve Bonners Ferry. Further evidence was produced at the rehearing by the rival applicants; after which the commission by its order No. 6010 denied the application of appellant, and granted certification to respondent for both Sandpoint and Bonners Ferry. Thereafter appellant's petition for rehearing was denied and this appeal followed.

In order No. 6010 the commission found and concluded that appellant had not produced evidence on the rehearing that would cause the commission to reverse its findings and previous orders Nos. 5886 and 5887.

It is well settled that findings, conclusions or orders of the Public Utilities Commission based upon facts not appearing in the record of the proceedings before it cannot be sustained. Due process requires that a party to contested proceedings before the commission must be afforded a full opportunity to meet the issues and to test the evidence upon which the commission bases its decision. Action by the commission upon facts which have not been brought on the record and as to which the aggrieved party was not given a full hearing, is a denial of due process. Application of Citizens Utilities Company, 82 Idaho 208, 351 P.2d 487.

Appellant contends the commission by refusing to "reverse" its findings and decision expressed in orders Nos. 5886 and 5887 (wherein its conclusion was based upon the fact that Petrolane had applied for certification to serve both communities), perpetuated its original error and continued to base its final decision upon facts not of record. Although its findings and conclusions in order No. 6010 could be construed to that effect, a reading of the entire order indicates that the commission did consider and evaluate the evidence produced by the applicants on the rehearing in support of their respective proposals for combined service to both Sandpoint and Bonners Ferry. Appellant was afforded an opportunity to meet the issues and to present all pertinent evidence.

Some of appellant's assignments question the commission's findings and conclusions upon controverted issues of fact, or issues invoking the discretionary authority of the commission. As to these, we regard the rulings of the commission as final.

However, we find irregularities which require further consideration by the commission.

Bonners Ferry is divided by the Kootenai river. The respondent's survey showed there were 495 houses on the south side of the river and 250 to 300 on the north side. Washington proposed to serve residents on both sides of the river, and presented its plan for crossing the river by attaching its pipe to the present highway bridge, estimating the cost of the river crossing at $3800. Petrolane did not propose to serve the area north of the river. Its regional manager, Mr. Lewis, testified his company had not planned a river crossing because it did not consider it feasible to serve the area north of the river at this time. Mr. Randall, the manager of Petrolane's utility department testified:

"I have made no study of this; as Mr. Lewis pointed out, construction costs over there for the mains themselves are probably going to be somewhat higher. The cost of a river crossing would take a lot of investigation I believe. If you could get across on one of the existing bridges this is one thing. Down in California they haven't had too much luck in this. The highway departments, the railroads, sometimes they take a dim view of hanging gas lines on their bridges. And underwater crossings just looking at it, I don't think this would be too bright an idea. An overwater crossing would require a separate bridge, but I have made no estimate on the cost of this, because I concluded just from inspection that this would not be feasible at this time."

From the foregoing it is evident that Petrolane made no estimate of the cost of serving the area north of the river, and that their proposed rate for residential consumers was based upon service to the south side only. The commission in its order No. 6010 compared the annual cost to residential consumers as proposed by Washington at $181.69, and by Petrolane at $167.20, based upon 1400 therms per customer per year. However, respondent calls attention to the fact that the cost used for Petrolane in the comparison is based upon its proposed rate for Sandpoint. Appellant's computation of Petrolane's annual cost, based upon the schedule which it proposed for the combined operation in both communities, was $175.75 per annum. Petrolane's manager testified that he had not made such a computation and assumed that appellant's computation was correct. Thus, the difference in the annual rate for residential consumers was not as great as assumed by the commission. This is not in itself a controlling item, but when it is considered in connection with Washington's proposal to serve the area north of the Kootenai river, it becomes significant.

Petrolane estimated residential attachments for the first five years for Bonners Ferry at 220; Washington, at 228. Seven-

ty-one of Washington's estimate was for residences on the north side of the river. Concerning the estimates of residential attachments, the commission said:

"* * * It is also apparent that, as far as customer attachments are concerned, each of the applicants is in the same relative position as in the original hearing. Petrolane's estimates appear to be more reasonable, especially the commercial customer attachment."

If Petrolane's estimate of the residential customer attachments was more reasonable at 220 for the south side of Bonners Ferry than Washington's 228 for the entire area, 71 of which were estimated for the north side, then obviously the 71 estimated for the north side was an underestimate, indicating that upwards of 25% of the prospective residential users of natural gas in Bonners Ferry are denied service in the immediate future by the certification of Petrolane.

The engineer for Washington testified that the estimated $2.40 per foot for the river crossing compared favorably with the cost of installation underground; and based on past experience of his company, the river crossing presented no problem. The engineer for Kootenai Gas Utilities (a rival applicant) originally questioned the feasibility of the river crossing, but had changed

his mind; that appellant's proposed crossing was sound; and that Kootenai Gas had changed its position and now proposed to serve the north side of Bonners Ferry. In addition to the cost of crossing the river, the various applicants considered the scattered condition of residences and commercial buildings on the north side, and the rocky condition of the soil, in determining feasibility. Of the five subdivisions on that side of the river, testified to by respondent's regional manager, two were relatively closely built up. There was no evidence that service to a portion of the north side was not feasible. The opinions voiced by the two witnesses for Petrolane were based on general inspection of the area and their conclusion that the river crossing would be costly. The commission concluded:

"* * * Even though Washington has presented a method for crossing the river, we are still doubtful that service to the north side is economically feasible at the present time."

There being no expert testimony challenging the feasibility of the Washington plan for serving the north side of Bonners Ferry, the commission either should have preferred such applicant, or investigated further in order to satisfy itself as to the feasibility of such service. Application of Intermountain Gas Company, 77 Idaho 188, 289 P.2d 933.

It was represented to the commission that the county commissioners of Bonner county and the council and mayor of Sandpoint favored the certification of appellant. The city of Sandpoint, through its mayor and council, has taken a strong stand in support of the application of Washington. With the permission of this court, the city attorney filed a brief herein and participated in oral argument. Local authorities may not decide or control issues, the determination of which the law enjoins upon the commission. However, the opinions and wishes of the people to be served by a public utility, in choosing between rival applicants, should receive consideration by the commission. In re Allegany Gas Co., P.U.R.1931D 415. The record here does not show what consideration, if any, the commission gave to the wishes of the prospective consumers, as expressed by their local authorities.

Petrolane is one of fifty or more fully owned subsidiaries of Petrolane Gas Service, Inc., a California corporation, with its principal offices at Long Beach, California. Mr. John C. Wallace, respondent's vice president in charge of operations in the northwest, residing at Billings, Montana, testified that the parent corporation provides most of the executive management for all of its subsidiaries, as well as other services, and that he would be responsible for overall management of respondent. A sister subsidiary, Petrolane-Kootenai Gas Service, is presently serving Sandpoint and Bonners Ferry with L P gas. Mr. Wallace further testified:

"We are not interested in utilities in areas wherein we do not now operate. We are interested in furthering the gas business that we now have in these particular areas."

This statement tends to indicate that Petrolane's interest in L P gas distribution would conflict with its interest in natural gas distribution; that it would not be as vigorous in pushing its natural gas lines and connections in competition with a sister subsidiary where the overall result would not be to the advantage of the parent company. This could be a factor in its attitude toward the feasibility of serving the north side of Bonners Ferry. The record does not show what consideration was given to this factor by the commission.

Washington's head offices are at Spokane, Washington, comparatively near to the area to be served, and for more than two years it has been engaged in serving natural gas in other communities in this state in that general area. See Re Allegany Gas Co., P.U.R.1931D 415. Washington is not interested in the L P gas business, and is not engaged in the distribu-

**350**

tion of electrical energy in either Sandpoint or Bonners Ferry.

Two of respondent's sister subsidiaries, one in California and one in Nevada, are engaged in piped L P gas distribution. This raises the question as to whether the parent company is a holding company within the meaning of the federal Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq., and if so whether it is acting in violation of that law. Enforcement of, or compliance with, federal law is not of concern either to the commission or this court. However, respondent's proposal contemplates financing by and through the parent company. Hence, the question of its compliance with the federal law could have an important bearing upon its ability to finance the project. This question was not urged upon the commission by appellant upon the rehearing. However, it was mentioned and, since we have concluded to remand the cause to the commission for further consideration, we call attention to it as an item that should receive attention.

The orders appealed from are set aside and the cause is remanded to the commission for further proceedings consistent with this opinion. I.C. § 61–629.

Costs to appellant.

SMITH, C. J., McQUADE and McFADDEN, JJ., and SCOGGIN, District Judge, concur.