382 P.2d 777

**PETROLANE GAS SERVICE, INC., Applicant-Appellant,**

v.

**IDAHO PUBLIC UTILITIES COMMISSION, Grantor-Respondent,**

and

**The Washington Water Power Company, Applicant-Respondent.**

**Application of BONNER GAS COMPANY et al.**

No. 9288.

Supreme Court of Idaho.

June 7, 1963.

Allan G. Shepard, Atty. Gen., and John B. Kugler, Asst. Atty. Gen., for grantor-respondent Idaho Public Utilities Commission.

Watt E. Prather of Prather & Wilson, Bonners Ferry, Robert V. Wills, Long Beach, Cal., for applicant-appellant Petro-lane Gas Service, Inc.

Carey H. Nixon, Boise, W. J. Nixon, Bonners Ferry, Robert L. Simpson and Alan P. O'Kelly, of Paine, Lowe, Coffin, Herman & O'Kelly, Spokane, Wash., for applicant-respondent Washington Water Power Co.

SMITH, Justice.

Appellant Petrolane Gas Service, Inc., and respondent The Washington Water Power Company, are rival applicants for a certificate of convenience and necessity for distribution of natural gas in the communities of Sandpoint and Bonners Ferry, Idaho. Hereinafter appellant will be referred to as "Petrolane," respondent as "Washington," and grantor-respondent as the "Commission."

This cause was previously before this Court, the opinion being reported as Washington Water Power Co. v. Idaho Public Util. Comm., 84 Idaho 341, 372 P.2d 409. In accordance with such previous opinion, The Commission held an additional hearing August 15, 1962, and, on certain issues, received further evidence offered on behalf of both parties, the only issue relevant to this appeal being:

The feasibility of the Kootenai River crossing, and service to the north side of Bonners Ferry.

Thereafter, the Commission, October 3, 1962, issued its Order 6563 granting Washington a certificate of public convenience and necessity for distribution of natural gas in Sandpoint and Bonners Ferry, and canceling Certificate of Convenience and Necessity No. 245 previously issued to Petrolane. Following the issuance of Order 6563, Petrolane filed a petition for rehearing which the Commission, by its Order 6606, subsequently denied. Petrolane thereupon appealed from both orders.

This appeal, as did the previous appeal, involves the question as to which applicant, whether appellant Petrolane, or respondent Washington, is entitled to a certificate of public convenience and necessity to serve the communities of Sandpoint and Bonners Ferry.

The present appeal encompasses the facts related in the prior opinion, Washington Water Power Co. v. Idaho Public Util. Comm., supra, and additional facts developed at the hearing after the remittitur.

The determinative factual issue upon which the Commission chose the applicant Washington, over the other applicant Petrolane, was that of feasibility of service to the north side of Bonners Ferry to be included in the initial installation of service to the communities of Sandpoint and Bonners Ferry.

The Commission, in its previous Order 6010, involved in the first appeal, found that service to the north side of Bonners Ferry was not initially feasible, and for that principal reason awarded a certificate of public convenience and necessity to Petrolane. Upon remittitur, and having received further evidence on this question, the Commission found that Washington's newly proposed plan, initially to include natural gas service to the north side of Bonners Ferry, is feasible. The Commission thereupon canceled the certificate of public convenience and necessity previously issued to Petrolane and issued such a certificate to Washington, for the furnishing of natural gas service to Sandpoint and Bonners Ferry, inasmuch as Washington proposed to include initial service to the north side of Bonners Ferry, whereas, appellant Petrolane did not propose to include such service initially to that area of Bonners Ferry.

While the principal question for review on this appeal is whether the evidence is sufficient to support the Commission's finding that service to the north side of Bonners Ferry is feasible, and whether the Commission regularly pursued its authority in the premises, nevertheless in our review on this appeal we shall dispose of Petrolane's various assignments of error.

Petrolane, by its first assignment, contends that it was denied due process of law in that the Commission based its findings and Order 6563 "upon calculations, conclusions and findings made outside the record," without notice to Petrolane or opportunity afforded it to rebut the same. Such assertion relates to the Commission's computations of Petrolane's projected rate of return, referred to in the Commission's recitals in its Order 6563, which read:

"We have made further calculations from the exhibits submitted in evidence in this proceeding and find that the rate of return that would be earned from natural gas service in Sandpoint and Bonners Ferry, not including the north side, would exceed 7½ per cent in the fourth and fifth year; and with the north side included, the rate would exceed 7 per cent in the fourth and fifth years. Such rate of earnings on an average net investment base would indicate to us that under the studies made by Petrolane the combined system including service to the north side would be feasible."

The Commission refers to the record herein to show that its computations are based upon Petrolane's own evidence submitted in these proceedings. (See the Commission's Order 6010 referred to in Washington Water Power Co. v. Idaho Public Util. Comm., supra, which summarizes each applicant's anticipated investment necessary to construct a natural gas distribution system in the communities of Sandpoint and Bonners Ferry,—Washington's estimates including initial service to the north side of Bonners Ferry, and Petrolane excluding such service; also Petrolane's Exhibit N, introduced in evidence at the additional hearing after remittitur in the matter of the first appeal, particularly Tables C and D of that exhibit relating to Petrolane's estimated costs of distribution facilities for servicing the north side of Bonners Ferry, and like data as regards the combined systems of Sandpoint and Bonners Ferry, including the north side of Bonners Ferry.) In exemplification, we shall refer to those exhibits and to Petrolane's figures and computations therein contained, projected for the fourth and fifth years of the contemplated service; and shall ascertain whether any factor dehors the record, suggested to be considered by the Commission, and whether the record considered alone without application of any such factor, will indicate any adverse effect upon Petrolane's projected "rate of return," thus adversely to affect the aspect of feasibility of Petrolane servicing the north side of Bonners Ferry.

Petrolane's investment, shown by its exhibits, for the combined systems, excluding the north side facilities in Bonners Ferry, and set forth in the Commission's Order 6010, projected for the fourth year of ser-

vice, shows the figure of $457,035; and for the fifth year, $436,385. For the fourth year, Petrolane's estimated additional investment for servicing the north side of Bonners Ferry is shown by Exhibit N, Table C, as $55,680, and for the fifth year, $59,110. The cumulative total at the end of the fourth year is $513,365, and at the end of the fifth year, $545,495.

Axiomatically, the year end total of estimated investment for the fourth year is the same as the beginning year total for the fifth year; and when such figure is added to the fifth year end figure and the total divided by two, such results in the figure of $529,430 as Petrolane's estimate of average plant investment for the fifth year, again shown by its own figures.

Petrolane's estimated operating expense for Sandpoint and Bonners Ferry including the north side for the fifth year (Exhibit N, Table D) is $42,905. The Commission, as *one* basis of computation, suggests the inclusion, as operation capital, of one-eighth of such figure of operating expense, or approximately $5,363, to be added to the figure $529,430 average plant investment for the fifth year, to arrive at a figure of total estimated plant investment of $534,793.

Petrolane shows its estimated plant depreciation for the entire system, including the north side of Bonners Ferry (Exhibit N, Table D) through the fourth year as $40,117; the average for the fifth year would be one-half of the total shown for that year, or $6,618; the accumulated total of depreciation averaged for the fifth year would amount to $46,735; such figure subtracted from $534,793, average plant investment for the fifth year would leave $488,058 net average plant investment for that year.

Finally, when Petrolane's estimated average net plant investment figure of $488,058 for the fifth year is divided into its estimated net revenue of $35,868 for the fifth year, the result is 7.35% estimated net rate of return. Figured in like manner from Petrolane's exhibits for the fourth year, a net rate of return of approximately 7.32% results.

All of the figures are taken from Petrolane's exhibits with the exception of the Commission's suggestion of inclusion of one-eighth of Petrolane's operating expense for the year under consideration, to be added to the average figure of plant investment for the particular year. However, as the Commission points out, if no figure of working capital is included in the calculation of net rate of return, such rate of return would be raised to 7.61% in the fourth year, and 7.43% in the fifth year.

The Commission also points out that if the "end of the year" method is utilized, and a working capital allowance is *not* included in the calculations, then according to Petrolane's exhibits, an estimated rate of return is indicated of 7.39% in the fourth

year, and 7.29% in the fifth year. The Commission also shows that if the "end of the year" method is utilized and an allowance of one-eighth of the operating expense is included for working capital, the rate of return in the fourth year would be 7.31%, and in the fifth year 7.21%. Under either, the average year method, or end of the year method, the Commission further shows that reasonable organization expense and the suggestion of working capital allowance could be trebled, both to be considered in the calculations, and that the rate of return in the fourth and fifth year still woul! exceed 7%.

The Commission further points out that the aforesaid estimated rates of return result, even though Petrolane included in its figures an estimated cost factor of $15,000 for installation of a natural gas line crossing across the Kootenai River to the north side of Bonners Ferry, which sum is considerably greater than Washington's estimated cost factor of $7,200 for such a crossing across the Kootenai River.

■ Petrolane does not challenge the Commission's finding that a rate of return of 7% or more is indicative of feasibility of the entire natural gas distribution system including service to the north side of Bonners Ferry; nor does it challenge the reasonableness of the Commission's suggested mathematical factor of one-eighth of the operating expense to be added to the

figure of average plant investment, to arrive at a figure of total plant investment, as one basis of figuring Petrolane's estimated rate of return. Its contention, that it was not accorded due process of law because the Commission allegedly applied such mathematical factor not included in the record, as one basis of figuring Petrolane's estimated rate of return, is answered by Capital Water Co. v. Public Utilities Commission, 44 Idaho 1, 21, 262 P. 863, as follows.

" * * * the sum necessary for working capital of a utility is addressed to the sound discretion of the Utilities Commission, and, in the absence of an abus_ of discretion, such an allowance will not be set aside."

See also Boise Artesian Water Co. v. Public Utilities Commission, 40 Idaho 690, 236 P. 525. Here, in the light of various analyses, we find no abuse of the Commission's discretion in the premises.

■ The Commission's suggested use of such mathematical factor, under one method of figuring Petrolane's estimated rate of return, also raises the question of the sufficiency of the evidence to sustain the Commission's figures. But as hereinbefore shown, the suggested factor of one-eighth of the operating expense suggested by the Commission to be added to the figure of average plant investment, to arrive at a total estimated plant investment, need not

be considered at all. Other methods applied by the Commission to Petrolane's studies, still show a projected rate of return of 7% or better. There being substantial competent evidence to support the Commission's finding in the premises, we therefore hold that Petrolane's first assignment of error is without merit.

■ Petrolane's second assignment of error attacks the Commission's finding that service to the north side of Bonners Ferry is feasible. The question of the feasibility of serving all of Bonners Ferry was one of principal issues involved in Washington Water Power Co. v. Idaho Public Util. Comm., supra; therein this Court pointed out that in the light of the evidence submitted in the prior hearings, the Commission should further investigate the proposal to serve all of Bonners Ferry.

Washington, at the further hearing held August 15, 1962, presented evidence to show that crossing the Kootenai River was engineeringly sound, and that natural gas service to all of Bonners Ferry was feasible. Washington called various expert witnesses in support of its position that service to the north side of Bonners Ferry was feasible. Witness Meacham, a utility contractor, testified that the proposed crossing of Kootenai River was feasible and that he would install such crossing for $7,200. Washington's expert witnesses, Ceserani, Martin, Nabors and Douglas, all supported the location, design and feasibility of Washington's proposed river crossing. Washington's witness Coombs also testified as to the feasibility of servicing the north side of Bonners Ferry with natural gas.

In reviewing a finding or order of the Commission, this Court is cognizant of the applicable rule as set forth in Application of Union Pac. R. Co., 65 Idaho 221, 229, 142 P.2d 575, 578, as follows:

"The law is that findings and orders of the Public Utilities Commission, if supported by competent evidence, will be binding upon this court, and they will be reversed only when it is shown the Commission has abused its discretion or failed to follow the law. * * "

See also Application of Intermountain Gas Company, 77 Idaho 188, 289 P.2d 933, cert. dismissed 352 U.S. 801, 77 S.Ct. 20, 1 L.Ed. 2d 37; Application of Boise Water Corporation, 82 Idaho 81, 349 P.2d 711; Application of Citizens Utilities Company, 82 Idaho 208, 351 P.2d 487; Application of Bermensolo, 82 Idaho 254, 352 P.2d 240; Application of Forde L. Johnson Oil Company, 84 Idaho 288, 372 P.2d 135; Washington Water Power Co. v. Idaho Public Util. Comm., 84 Idaho 341, 372 P.2d 409. Petrolane's second assignment is lacking in merit.

Petrolane's assignments of error III (a) and III (b) relate to Washington's claim of economic feasibility of servicing the north

side of Bonners Ferry, as being contingent upon attachment to Washington's proposed natural gas distribution system of certain large commercial users which, if not obtained, would result in unreasonably subsidizing the cost of the contemplated Kootenai River crossing to other customers in the Sandpoint-Bonners Ferry area. Petrolane also asserts failure on Washington's part to show its estimate as regards commercial customers on the north side. Again, such assignments raise the question of the sufficiency of the evidence to sustain Washington's claim of feasibility. In that regard Washington's witness Hoke testified at the combined hearings held May 22, 1961, relating to the areas of Sandpoint and Bonners Ferry, that there were nine commercial users on the north side of Bonners Ferry, and that Washington had in contemplation an estimated attachment of six of those commercial users. We deem such assignments to be without merit.

By its assignment III(c), Petrolane asserts that the effect of granting a certificate of convenience and necessity to Washington will result in compelling the estimated 835 customers in the Sandpoint-Bonners Ferry area to subsidize a higher rate for gas service in order that a pipeline be installed across the Kootenai River eventually to serve 71 customers on the north side of Bonners Ferry. In answer to such contention, we deem it appropriate

to refer to the rule announced in Minneapolis Gas Co. v. Federal Power Commission, (D.C.Cir.), 108 U.S.App.D.C. 36, 278 F.2d 870, to the effect that, in determining an application for authority to extend utility service to new areas, it is recognized that the various parts of a utility company's system need not and cannot be equally profitable. We deem such assignment to be without merit.

Petrolane's assignments of error III(d), III(e), III(f), III(h), and III(i) again question the sufficiency of the evidence to sustain the Commission's finding of feasibility of Washington's proposed underwater crossing of Kootenai River. Petrolane expresses fear that the crossing is dangerous and hazardous, and asserts high cost of ditching on the north side of the river. Suffice it to say that Mr. Douglas, Boundary County's flood control coordinator, testified that the proposed location of Washington's underwater crossing of the river "is perhaps the most feasible crossing as far as local flood control or protection work that might have to occur there, that could have been chosen." His testimony was grounded upon his familiarity with the location and design of Washington's proposed underwater crossing of the river. He further testified that the river bed at the location of Washington's proposed crossing is a solid bottom of rock; also that any seepage in low areas would be negligible for a gas line buried to a depth of thirty inches.

Such constitutes competent evidence to support the Commission's finding that Washington's proposed crossing is feasible. The referred to assignments are not meritorious.

■ Petrolane's assignment III(g) relates to Petrolane's assertion that Washington did not produce evidence of approval by the U. S. Army Engineers of the proposed underwater crossing of Kootenai River. That argument is answered by Application of Trans-Northwest Gas, 72 Idaho 215, 238 P.2d 1141, wherein this Court held that even though an applicant might be required to secure a certificate of necessity from a federal agency before bringing natural gas into the State, it does not follow that the application to the Commission for a certificate of public convenience and necessity to transport and distribute natural gas in the State is premature. See also Application of Citizens Utilities Company, 82 Idaho 208, 351 P.2d 487. Such assignment is not meritorious.

■ Petrolane by its assignments IV and V asserts that the Commission misinterpreted its position as regards its proposed service to the north side of Bonners Ferry. Suffice it to say that Petrolane's witness, Zitzo, an engineer and consultant, testified that he would not advise the Commission of any particular date when Petrolane would service the north side of Bonners Ferry with natural gas. The record shows that Pertolane never did commit itself to any particular time in regard to its proposed installation of natural gas facilities to service that area. Such constitutes substantial, competent evidence to support the Commission's finding that Petrolane "did not change its position on service to the north side except to adopt a wait-and-see policy with service to the north side at some probably indefinite future date." The assignments are not meritorious.

■ ■ Petrolane by its assignment of error VI asserts that the Commission failed to give weight to the position of the Board of Trustees of Bonners Ferry concerning Petrolane's proposed gas service to the north side of Bonners Ferry. Such assignment goes to the weight of the evidence. Assuming arguendo the truth of such assertion, nevertheless, the viewpoint of such Board of Trustees in the premises would constitute only another factor to be weighed by the Commission in arriving at its decision in this proceeding. This Court, under assignments which question the sufficiency of the evidence to sustain the Commission, is limited in its review to ascertaining whether the Commission's findings are supported by substantial competent evidence. The assignment is without merit.

■ Petrolane by its assignment VII asserts that the Commission erred in finding that Petrolane proposed a higher rate for natural gas service extended to the north side of Bonners Ferry. Petrolane as-

serts lack of evidence to support such a finding. At the original hearing concerning natural gas service in Bonners Ferry, Mr. Randall, an engineer and manager of Petrolane's utility department, testified as regards Petrolane crossing the Kootenai River to service the north side of Bonners Ferry with natural gas, under the present state of customer availability in that area; he stated: "I am sure that if we did it now the rate that would be proposed would be materially higher." Petrolane in effect reiterated such position throughout the hearings in this proceeding. Particularly, as Petrolane itself points out, through its witnesses—engineers—Messrs. Randall and Zitzo, who testified that, in their opinion, initial piping to the north side of Bonners Ferry would not be feasible at Petrolane's proposed rates, or at any reasonable rates. We conclude that the Commission's finding to the effect that Petrolane proposed a higher rate if service was to be extended to the north side of Bonners Ferry is based upon substantial competent evidence. Petrolane's said assignment lacks merit.

The orders of the grantor-respondent Idaho Public Utilities Commission, Nos. 6563 and 6606, are affirmed.

Costs to applicant-respondent The Washington Water Power Company.

McQUADE, McFADDEN and TAYLOR, JJ., and MARTIN, D. J., concur.