735 P.2d 1004

**In the Matter of the Application of BURLINGTON NORTHERN RAILROAD COMPANY To Close the Agency At Coeur d'Alene, Idaho, Brotherhood of Railway and Airline Clerks, Intervenor.**

**BROTHERHOOD OF RAILWAY AND AIRLINE CLERKS, Appellant,**

v.

**The IDAHO PUBLIC UTILITIES COMMISSION and Burlington Northern Railroad Company, Respondents.**

No. 16276.

Supreme Court of Idaho.

March 26, 1987.

Amy S. Howe, and Bruce S. Bistline, Bistline Law Office, Boise, for appellant.

´ Jim Jones, Atty. Gen., Donald L. Howell, II, Deputy Atty. Gen., Boise, for respondent, Idaho Public Utilities Com'n.

Morgan W. Richards, Jr., of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for respondent, Burlington Northern R. Co.

Michael Holland, Seattle, Wash., for respondent, Burlington Northern R. Co.

DONALDSON, Justice.

This is an appeal from an order of the Idaho Public Utilities Commission (I.P.U. C.), which granted Burlington Northern Railroad Company's petition to discontinue its regular station agency at Coeur d'Alene, Idaho. Brotherhood of Railway and Airline Clerks (B.R.A.C.) have appealed, arguing that the I.P.U.C. (1) acted arbitrarily and unreasonably in making its findings; and (2) has divested itself of authority to regulate agency services provided by the out-of-state station agency. For reasons that follow, we affirm the I.P.U.C.'s order granting closure of the Coeur d'Alene station agency.

In October of 1984, Burlington Northern petitioned the I.P.U.C. for permission to close its one-man freight agency at Coeur d'Alene, Idaho, and transfer the functions of the agency to its larger facility at Spokane, Washington. The Coeur d'Alene's agency work force consisted of a single railroad employee who conducted the railroad's local freight business. In particular, the Coeur d'Alene freight agent performed the following duties: ordering empty railroad cars for local customers, billing the freight charges for outbound shipments, processing the weigh bills for inbound railroad cars, obtaining switching instructions for the spotting of cars, processing freight damage claims, and performing other duties as required.

Under modified procedure, the I.P.U.C. held no formal hearing, but instead, solicited written protests of the closure. Protests were received from three parties: B.R.A.C.; and two infrequent shippers, Mr. Lyle Evans and Jolene Runge. None of the primary shippers filed protests of the closure. The Coeur d'Alene Chamber of Commerce filed a letter of support for the closure, as long as the level of customer service was to remain the same. The I.P.

U.C. considered the petition and entered its order on March 1, 1985, allowing closure.

Subsequently, the I.P.U.C. granted a B.R.A.C. petition for reconsideration, and then ordered a public hearing. Neither of the shippers who had filed written protests, or any other shippers, or protestants appeared, despite individual notice of the hearing in addition to the public notice. No one from the public appeared to protest the closure. Four witnesses appeared on behalf of Burlington Northern and testified in support of the closure. B.R.A.C. offered only one witness. After hearing the evidence, a unanimous I.P.U.C. issued its final order affirming its decision. The commission concluded that the absence of the protesting public was indicative of public acceptance for the proposed agency closure. Based on the evidence presented at the hearing, the commission found that:

"It would not be in the public interest to require the railroad to maintain an agent in Coeur d'Alene. No evidence was presented at the hearing showing that the agent's functions could not be performed through a toll-free number to Spokane.

"We will not stand in the way of [Burlington Northern's] attempts to operate more efficiently, especially where the local populace presents no protest to the closure.

"We believe that Burlington Northern should be given a chance to perform its railroad agency's services for its customers in the Coeur d'Alene area without the actual presence of an agent. If efficiency and savings result from the closure, it would certainly not be adverse to the public interest. However, failure to maintain an adequate level of service to the Coeur d'Alene shipping public would be adverse to the community interest of the valley, and will subject the railroad to commission scrutiny and possible reopening of the agency."

Initially, B.R.A.C. contends that the I.P. U.C. acted arbitrarily and unreasonably in that the evidence was insufficient to support its order closing the Coeur d'Alene agency. More specifically, the union asserts: (1) the commission's findings regarding cost savings are inadequate and misleading; and (2) statements concerning the railroad's work-force efficiency are unsupported by the evidence.

We begin by noting that the standards of review on appeal from an order of the I.P.U.C. are well established. The findings and orders of the I.P.U.C. on Burlington Northern's application to discontinue the agency service at Coeur d'Alene, if supported by competent and substantial evidence, will be binding upon the court, and will be reversed only if it is shown that the I.P.U.C. has abused its discretion or failed to follow the law. *Grindstone Butte Mutual Canal Company v. Idaho Public Utilities Commission,* 102 Idaho 175, 178, 627 P.2d 804, 807 (1981); *In Re Union Pacific Railroad Company,* 65 Idaho 221, 229, 142 P.2d 575, 577 (1943).

I.C. § 61–302, the statute addressing the duties of Public Utilities, provides as follows:

"**Maintenance of adequate service.**—Every public utility shall furnish, provide and maintain such service, instrumentalities, equipment and facilities as shall promote the safety, health, comfort and convenience of its patrons, employees and the public, and as shall be in all respects *adequate, efficient, just and reasonable.*"

I.C. § 61–302 (emphasis added).

As for the railroad's authority to close a station agency, I.C. § 61–316 states in part:

"**61–316. Profits.**—Nothing in this act shall be taken to prohibit any public utility from itself profiting, to the extent permitted by the commission, from any economies, efficiencies or improvements which it may make, and ... the commission is authorized to make or permit such arrangement or arrangements with any public utility as it may deem wise for the purpose of encouraging economies, efficiencies, or improvements...."

Therefore, the question before the I.P. U.C. was whether closure would permit Burlington Northern to save money, become more efficient or improve its method of service while maintaining adequate, efficient, just and reasonable services.

■ B.R.A.C. presented the testimony of one witness, union bargaining representa-

tive, Gordon Williams. Williams argued that closure would deprive Idaho shippers of the important personal contact available through the Coeur d'Alene agent while providing very little cost savings. Burlington Northern presented four witnesses who testified that closure of the Coeur d'Alene agency would result in cost savings and efficiency to the railroad, and that service at the station would be unaffected. They further testified that Burlington Northern's adequate service provided to its patrons in the Coeur d'Alene area would continue by use of a toll-free telephone line. In fact, testimony indicated that despite some initial problems with the toll-free line, (which has since been resolved), the shippers have not registered any complaints. As Duane R. Wilkerson, Train Master for Burlington Northern, testified:

> "We will be saving the cost of one employee five days a week for eight hours each day, and also the maintenance of the building. Although that building will be kept in use by another department, it ultimately will result in the removal of another building that [the] other department is using now."

Absent from the hearing were any shippers, business representatives, or Chamber of Commerce officials to protest the proposed closure. In fact, the Coeur d'Alene Chamber of Commerce had filed a letter of support for the closure, as long as the level of customer service would remain the same.

In addition to the evidence pertaining to the anticipated cost savings from the closure of the agency, the railroad asserted that the declining amount of rail traffic did not justify a freight agent at the Coeur d'Alene station. The record indicates that rail traffic to Coeur d'Alene and its blind sidings decreased from 4,125 cars in 1982 to 2,820 cars in 1984. The declining railroad car traffic also related to a decline in the freight work actually performed by the Coeur d'Alene agent. There was testimony that for the first eight months of 1984, the Coeur d'Alene agent only performed agency duties approximately 56% of his work day; and that the remaining 44% of the agent's work day was non-productive.

B.R.A.C. contends that the data submitted on the agent's productivity was inadequate and misleading in that it did not include his agency work for the blind sidings. They also assert that the data was compiled after the railroad transferred the agent's clerical functions to Spokane. However, a review of the evidence indicates to the contrary. The data does incorporate the work performed by the agent for Coeur d'Alene and all its blind sidings, and that the report was compiled before the transfer of the clerical functions to Spokane.

B.R.A.C. additionally argues that the railroad would not achieve greater work force efficiency by eliminating the Coeur d'Alene agency and transferring its functions to Spokane. They argue that the railroad did not demonstrate that its Spokane agency would operate at a higher efficiency level than the Coeur d'Alene agency. While there was no specific evidence presented indicating the additional resources, if any, that would be required in the Spokane agency to take on the additional work from the Coeur d'Alene agency, testimony at the hearing indicates that transferring the Coeur d'Alene agency's functions to Spokane would centralize the railroad's operations and increase the operating efficiency by using the technology that was available in the larger location. Thus, we conclude that the record supports the commission's findings that the railroad would achieve a cost savings and greater work force efficiency. Therefore, we hold that there is competent and substantial evidence supporting the I.P.U.C.'s Order No. 20065 permitting Burlington Northern to close the Coeur d'Alene agency.

 The second issue raised by B.R.A.C. is whether the transferring of the Coeur d'Alene agency functions to Spokane will divest the I.P.U.C. of authority to regulate service provided by the Spokane agency. We hold it does not.

I.C. § 61–129 declares that public utilities are "subject to the jurisdiction, control and regulation of the commission and to the provisions of [the Idaho Public Utilities Act]; provided, that the term 'public utility' as used in this act shall cover cases both where the service is performed or the com-

modity delivered...." Implicit in this section is the notion that the operative factor for jurisdictional purposes is the rendering of services within the state.

Here, although the agency functions may be performed in Spokane, Burlington Northern continues to operate in Idaho. The only change occurring is the transfer of processing the paper work from Coeur d'Alene to Spokane, some 30 miles away. We hold the I.P.U.C. has not relinquished its duty to regulate Burlington Northern by allowing closure of the Coeur d'Alene agency. If at any time, the railroad fails to provide and maintain adequate, efficient, just and reasonable service as required by I.C. § 61-302, the I.P.U.C. may enter appropriate orders and enforce those orders pursuant to I.C. § 61-701 *et seq.*

■ Burlington Northern requests attorney fees for defending this appeal pursuant to I.C. § 12-121 and I.A.R. 41. We agree with Burlington Northern's assertions that B.R.A.C. brought this appeal unreasonably and without foundation. B.R.A.C. has presented no evidence that the closure of the Coeur d'Alene agency has been detrimental to the maintenance of adequate service, has provided no basis for its contention that the I.P.U.C. has divested itself of authority and jurisdiction over Burlington Northern, and has presented no evidence from which this Court could find that the I.P.U.C.'s actions were not based on substantial and competent evidence. Therefore, an award of attorney fees to Burlington Northern is appropriate in this case. The I.P.U.C.'s failure to request attorney fees pursuant to I.A.R. 41 precludes any similar treatment.

I.P.U.C. Order No. 20065 is affirmed, with attorney fees to Burlington Northern.

Costs to Burlington Northern and the I.P.U.C.

SHEPARD, C.J., and BAKES and HUNTLEY, JJ., and WALTERS, J., pro tem, concur.